UNITED STATES of America, Appellee,

v.

**Duane Colbert EDWARDS, Appellant.**

UNITED STATES of America, Appellee,

v.

**Vonda Michelle DORTCH, Appellant.**

Nos. 95–3165, 95–3196.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 13, 1996.

Decided Oct. 29, 1996.

Rehearing Denied Dec. 20, 1996.

John C. Floyd, III argued the cause for appellant Duane Colbert Edwards.

Lisa B. Wright, Assistant Federal Public Defender, argued the cause for appellant Vonda Michelle Dortch. A.J. Kramer, Federal Public Defender, Washington, DC, and Santha Sonenberg and Amy Seidman, Assistant Federal Public Defenders, Washington, DC, were on brief.

James G. Flood, Assistant United States Attorney, argued the cause for the appellee. Eric H. Holder, Jr., United States Attorney, Washington, DC, and John R. Fisher and Thomas C. Black, Assistant United States Attorneys, Washington, DC, were on brief. Elizabeth Trosman, Washington, DC, entered an appearance.

Before: HENDERSON and RANDOLPH, Circuit Judges, and BUCKLEY, Senior Circuit Judge.

Opinion for the court filed by Circuit Judge HENDERSON.

KAREN LeCRAFT HENDERSON, Circuit Judge:

Duane C. Edwards and Vonda M. Dortch both pleaded guilty to one count of distribution of cocaine base in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(A). In this consolidated appeal Edwards and Dortch both challenge the length of their respective sentences. Edwards challenges his sentence on the grounds that the different punishment for crimes involving cocaine base versus powder cocaine under statutory mandatory minima as well as the United States Sentencing Guidelines (guidelines) is (1) in violation of the fifth, eighth and fourteenth amendments to the United States Constitution; (2) a bill of attainder in violation of article I, section 9 of the Constitution; and (3) ambiguous so that the rule of lenity should apply to shorten his sentence. Edwards also claims that Congress did not have the power under the Commerce Clause to enact the statute under which he was sentenced because it reaches drug activities that occur entirely intrastate. Dortch challenges her sentence on the grounds that the district court committed two errors under the guidelines in failing to grant her (1) a "minor participant" reduction and (2) a "diminished capacity" reduction. We affirm the sentences of both Edwards and Dortch.

## I.

In the spring of 1995 the United States Park Police received information that Dortch was selling cocaine base in Washington D.C. In the ensuing months an undercover officer contacted Dortch several times and attempted to obtain cocaine base from her. The contacts led to a series of four drug sales. Dortch played a role in each transaction and Edwards was involved in the final transaction.

First, on April 5, 1995, Dortch agreed to arrange for the sale of 62 grams of cocaine base to the undercover officer. The next day Dortch arrived at the agreed upon location in an automobile driven by David Henderson. Dortch entered the officer's car first and asked the officer if he would give her drugs in exchange for having arranged the deal. The officer refused. Henderson then entered the car and exchanged the 62 grams of cocaine base for $1700. Dortch then left the car while Henderson remained. Henderson gave the officer his telephone number and indicated that in the future they could cut Dortch out of the deal.

Second, on April 28, 1995, Dortch sold 58.6 grams of cocaine base to the undercover officer in exchange for $1700.

Third, Dortch introduced the undercover officer to a runner for a drug dealer who later exchanged 62 grams of what turned out to be baking soda for $1800 with the understanding that $100 was to go to Dortch. When the officer contacted Dortch and told her that he had been given baking soda, Dortch promised she would give him 125 grams of cocaine base.

Fourth, Dortch agreed to arrange for a sale of cocaine base to take place on June 15, 1995. Dortch arrived in a car driven by Edwards. While Edwards waited in the car, Dortch got in the undercover officer's vehicle and sold him 126.6 grams of cocaine base for $3400. Officers arrested Dortch and Edwards after this transaction. A search of Edwards's car uncovered an additional 61.61 grams of cocaine base.

Edwards pleaded guilty to one count of distribution of cocaine base in violation of 21 U.S.C. § 841(a) in connection with the June 15th drug sale. The drugs sold to the officer and the drugs found in Edwards's car were combined to set a base offense level of 34 under the guidelines. Edwards received a three-point reduction for acceptance of responsibility for a total offense level of 31, with a range of 108–135 months' imprisonment. Edwards's offense carried a statutory mandatory minimum of 120 months. 21 U.S.C. § 841(b)(1)(A). The district court sentenced Edwards to 120 months to be followed by five years of supervised release.

Dortch pleaded guilty to one count of distribution of cocaine base and aiding and abetting in violation of 21 U.S.C. § 841(a) and 18 U.S.C. § 2 in connection with the April 6th drug sale. In setting the base offense level under the guidelines, the district court included drug amounts from the first, second and fourth transactions set out above. This resulted in a base offense level of 34. Dortch was granted a three-level reduction for ac-

ceptance of responsibility under section 3E1.1. Also, because Dortch qualified for the "safety valve" under section 5C1.2,[1] the statutory mandatory minimum was not applied and she received a further two-level reduction under section 2D1.1(b)(4) which provides a reduction for certain drug offenses if the defendant qualifies for the "safety valve." With the reductions Dortch had a total offense level of 29, with a range of 87–108 months' imprisonment.

At her sentencing hearing, Dortch argued for a further two-level "minor participant" reduction under section 3B1.2 of the guidelines. Dortch claimed she was entitled to the reduction because she was a mere go-between for drug suppliers and received only a fraction of the profit from the deals. Dortch also sought a downward departure based on "diminished capacity" under section 5K2.13 of the guidelines. To support her request, Dortch produced an evaluation prepared by a psychologist. The evaluation stated that Dortch had attempted to commit suicide in 1994 and concluded that Dortch suffered from "a personality structure which is marked by (1) extreme introversion; (2) an inability to interact and connect with people; and (3) pronounced distrust of others." Dortch App. at 23. The report also concluded that these features of her personality "contributed to her involvement in this crime." *Id.*

The district court found that Dortch was eligible for neither a "minor participant" reduction nor a "diminished capacity" departure. The court sentenced Dortch to 87 months in prison to be followed by five years of supervised release.

## II.

Edwards received a ten-year mandatory minimum sentence under 21 U.S.C. § 841(b)(1)(A). Section 841(b)(1)(A) treats offenses involving cocaine base and offenses involving powder cocaine differently. The ten-year mandatory minimum applies if the

---

1. If a defendant qualifies for the "safety valve," the district court imposes the sentence without regard to any statutory mandatory minimum. The relevant considerations are the defendant's criminal history, whether the offense involved

death or injury or other violence, whether the defendant had a leadership role in the offense and the extent of the defendant's cooperation. *See* 18 U.S.C. § 3553(f)(1)-(5).

offense involves 50 grams or more of cocaine base but, for offenses involving powder cocaine, the ten-year mandatory minimum applies only to offenses involving 5 kilograms or more. Edwards argues that the sentencing policy disproportionately harms black defendants, the predominant users of cocaine base, and therefore violates various provisions of the Constitution.

Edwards first claims that the disparate impact on black defendants violates the equal protection component of the due process clause of the fifth amendment. We have previously rejected identical challenges. *United States v. Johnson,* 40 F.3d 436, 439–41 (D.C.Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1412, 131 L.Ed.2d 297 (1995); *United States v. Thompson,* 27 F.3d 671, 678 (D.C.Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 650, 130 L.Ed.2d 554 (1994). In *Johnson* we held that Congress had not acted with a discriminatory purpose in setting greater penalties for cocaine base crimes than for powder cocaine offenses. 40 F.3d at 440–41. We have also held that the punishment distinction between cocaine base and powder cocaine in the statute survives rational basis review. *Thompson,* 27 F.3d at 678; *United States v. Cyrus,* 890 F.2d 1245, 1248 (D.C.Cir.1989). We therefore reject Edwards's fifth amendment challenge to the statute. Edwards also claims that the severity of the sentences for cocaine base offenses under the statute constitutes cruel and unusual punishment under the eighth amendment. We have also previously rejected eighth amendment challenges to the statute. *Thompson,* 27 F.3d at 678; *Cyrus,* 890 F.2d at 1248. Finally, Edwards claims that the statute violates the equal protection clause of the fourteenth amendment. But the fourteenth amendment does not apply to the federal government; an equal protection challenge to the statute must be raised under the fifth amendment instead. As discussed above, we have explicitly rejected a fifth amendment equal protection challenge to the statute.

■ Edwards also argues that the differential treatment of cocaine base and powder cocaine offenses amounts to a bill of attainder in violation of article I, section 9 of the Constitution. Edwards rests his argument on language from *United States v. Brown,* 381 U.S. 437, 85 S.Ct. 1707, 14 L.Ed.2d 484 (1965), that bills of attainder encompass not only legislative acts that name specific persons but also legislation that applies to readily ascertainable classes of individuals. According to Edwards, Congress had information that imposing harsher penalties for cocaine base offenses would disproportionately affect black defendants. He concludes that blacks are an "easily ascertainable class" targeted by the law and therefore the law is a bill of attainder. Edwards Opening Brief at 27. Edwards's argument fails. The vice of a bill of attainder is that it impermissibly singles out a person or class of persons for punishment without judicial determination of guilt. *See Nixon v. Administrator of Gen. Servs.,* 433 U.S. 425, 468, 97 S.Ct. 2777, 2802–03, 53 L.Ed.2d 867 (1977); *Brown,* 381 U.S. at 450, 85 S.Ct. at 1715–16. The statute under which Edwards was sentenced, however, does not single out any particular class but rather by its plain terms applies to "any person." 21 U.S.C. § 841(b). Neither does the statute impose a penalty without judicial determination of guilt. The statute is one of general applicability providing for post-conviction punishment.

■ Edwards next argues that the terms "cocaine base" and "cocaine" as used in 21 U.S.C. § 841(b)(1)(A)(iii) are ambiguous and therefore the rule of lenity requires that the less severe penalty be applied. In Edwards's plea agreement he agreed that his offense involved 170 grams of cocaine base. Treated as "cocaine base" this amount of drugs yields a ten-year mandatory minimum sentence under the statute. If treated as "cocaine," there would be no mandatory minimum under the statute. Edwards argues that cocaine base and powder cocaine are pharmacologically indistinguishable; therefore, the term "cocaine" in the statute, which covers offenses involving powder cocaine, should apply equally to cocaine base. Edwards concludes that because both terms cover the substance involved in his offense, the rule of lenity requires the application of the less severe penalty.

The rule of lenity is not applied unless there is a "grievous ambiguity or uncertainty." *Chapman v. United States,* 500 U.S. 453, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991) (quoting *Huddleston v. United States,* 415 U.S. 814, 831, 94 S.Ct. 1262, 1272, 39 L.Ed.2d 782 (1974)). There is no "grievous" ambiguity in the terms "cocaine base" and "cocaine." We find ample support to conclude that Congress intended the stiffer penalties associated with "cocaine base" to apply to offenses involving crack cocaine and the less severe penalties to apply to offenses involving powder cocaine. Edwards does not dispute the point. Indeed, his equal protection argument is premised on the claim that a discriminatory purpose can be inferred from the fact that Congress treated cocaine base and powder cocaine differently. Likewise our decisions rejecting constitutional challenges to the statute assume that the statutory scheme plainly distinguishes between cocaine base and powder cocaine. *See, e.g., Johnson,* 40 F.3d at 438 ("These cases involve a constitutional challenge to the Anti–Drug Abuse Act of 1986 ... which punishes crimes involving 'crack' cocaine more severely than those involving an equivalent amount of powder cocaine."). Thus Edwards's rule of lenity claim appears to be not that congressional intent to treat the substances differently cannot be ascertained but rather that the statute fails to unambiguously give effect to that intent inasmuch as the substances are pharmacologically indistinguishable. Whatever the pharmacological similarities, however, we find no ambiguity in the terms "cocaine base" and "cocaine" and join the other circuits that have rejected rule of lenity challenges to the statute. *See United States v. Jackson,* 84 F.3d 1154, 1159–61 (9th Cir.1996); *United States v. Booker,* 70 F.3d 488, 489–94 (7th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1334, 134 L.Ed.2d 484 (1996); *United States v. Jackson,* 64 F.3d 1213, 1219–20 (8th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 966, 133 L.Ed.2d 887 (1996); *United States v. Fisher,* 58 F.3d 96, 98–99 (4th Cir.),

*cert. denied,* —— U.S. ——, 116 S.Ct. 329, 133 L.Ed.2d 229 (1995).

■ Finally, Edwards claims that Congress acted beyond its powers under the Commerce Clause in enacting section 401(a)(1) of the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 841(a)(1) (Drug Act), because it regulates intrastate drug activities that do not substantially affect interstate commerce. Edwards relies on the Supreme Court's decision in *United States v. Lopez,* —— U.S. ——, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), which struck down the Gun–Free School Zones Act of 1990, 18 U.S.C. § 922(q) (Gun Act), on the ground that Congress had exceeded its power under the Commerce Clause in enacting the statute. We have previously denied a Commerce Clause challenge to the Drug Act. *United States v. Davis,* 561 F.2d 1014, 1018–20 (D.C.Cir.), *cert. denied,* 434 U.S. 929, 98 S.Ct. 416, 54 L.Ed.2d 290 (1977). The Court's decision in *Lopez* leaves *Davis* intact. In *Lopez* the Court held that the conduct prohibited by the Gun Act did not have a substantial effect on interstate commerce. —— U.S. at —— – ——, 115 S.Ct. at 1630–31. By contrast, the Drug Act includes specific findings that intrastate drug activity has a substantial effect on interstate drug activities and that effective control of drug activities occurring intrastate requires both interstate and intrastate regulation. 21 U.S.C. § 801. We follow the other circuits that have upheld the Drug Act against a post-*Lopez* Commerce Clause challenge.[2] *See, e.g., United States v. Wacker,* 72 F.3d 1453, 1474–75 (10th Cir.1995); *United States v. Leshuk,* 65 F.3d 1105, 1111–12 (4th Cir. 1995).

### III.

■ Dortch argues that the district judge erred in denying her a two-level "minor participant" reduction under section 3B1.2 of the guidelines.[3] Dortch first claims

---

**2.** Even if we were to find that Congress exceeded its power under the Commerce Clause in enacting the Drug Act, this would not affect the outcome here. These drug transactions took place in the District of Columbia. Assuming, *arguendo,* that there are limitations on Congress' power

to regulate local drug activities elsewhere in the country, Congress has the power to police drug activity in the District of Columbia under article I, section 8 of the Constitution.

**3.** Section 3B1.2 provides:

that the district court applied the incorrect legal standard in denying the minor participant reduction. This claim raises a question of law that we review *de novo*. *See United States v. Kim,* 23 F.3d 513, 516–17 (D.C.Cir. 1994). We have previously stated the legal standard applicable to the minor participant reduction as follows:

> Before it may find that a defendant was a minor participant in the offense ... the evidence available to the court at sentencing must, at a minimum, show (i) that the "relevant conduct" for which the defendant would, within the meaning of section 1B1.3(a)(1), be otherwise accountable involved more than one participant ... and (ii) that the defendant's culpability for such conduct was relatively minor compared to that of the other participant(s).

*United States v. Caballero,* 936 F.2d 1292, 1299 (D.C.Cir.1991). It is undisputed that there were multiple participants involved in the "relevant conduct" for which Dortch is accountable. Dortch's claim is that the district court denied the minor participant reduction without making the necessary findings of relative culpability required by the second part of the legal standard set forth above. In denying the minor participant reduction, the district judge stated at the sentencing hearing:

> Now, I want you to know that based upon my review of the records, I do believe you were more than a facilitator and that you voluntarily and knowingly did what brings you before the court.

Dortch Sent. Tr. at 29.

■ Dortch argues that this statement shows that the district judge equated Dortch's status as "more than a facilitator" coupled with the fact that she acted "voluntarily and knowingly" with ineligibility for the minor participant reduction. Dortch argues further that the sentencing judge erroneously imposed a per se rule that a defendant who is "more than a facilitator" and acts "knowingly and voluntarily" can never qualify for the minor participant reduction even if that person's culpability is relatively minor compared to that of other participants. The adoption of such a per se rule would be contrary to our holding in *Caballero* where we held that the district court erred in granting the two-level minor participant reduction based on the defendant's generic status as a "courier." 936 F.2d at 1299–1300. The *Caballero* holding, however, does not mean that we will reverse every time the district court fails to use the magic words "relative culpability" or does not make explicit findings of relative culpability on the record. The import of *Caballero* is simply that the district court must assess the defendant's role in the specific criminal conduct and not gauge his culpability generically. We believe that the district judge did just that in this case.[4]

In deciding the issue we do not view the single statement in which the judge explained her denial of the reduction in isolation. Instead, we look to the entire circumstances of the sentencing hearing as well as the record. In the first place, Dortch's attorney argued for the minor participant reduction by telling the court: "Essentially, Ms. Dortch was what I believe the law would classify her to be a facilitator, and that's why we are asking the Court to adjust her role in the offense to that of a minor participant." Dortch Sent. Tr. at 8. It was perfectly reasonable for the district court to deny Dortch the reduction in the same terms her attorney used. Moreover, the details of Dortch's role in the offense were rehearsed at the hearing and the judge concluded that Dortch was more than a facilitator "based upon [her] review of the records." Dortch Sent. Tr. at 29. We find that this shows the district

---

Based on the defendant's role in the offense, decrease the offense level as follows: (a) If the defendant was a minimal participant in any activity, decrease by 4 levels. (b) If the defendant was a minor participant in any criminal activity, decrease by 2 levels. In cases falling between (a) and (b) decrease by 3 levels.

4. In accord with *Caballero,* we reaffirm the impropriety of a per se rule in this context. Thus it would be incorrect to say that as a matter of law one who is "more than a facilitator" could never qualify for the minor participant reduction. However, we suspect that it is a rare case in which a defendant can be accurately described as "more than a facilitator" and yet also be relatively less culpable than other participants so as to qualify for the minor participant reduction.

judge properly examined Dortch's role in the charged offense and not the role of defendants who are "more than facilitators" generally. In contrast, the district judge in *Caballero* stated that the defendant was entitled to the reduction because "people like this defendant ... really are just couriers and do not have a major responsibility for the drug plague that plagues this country." 936 F.2d at 1299.

■■■ Dortch argues in the alternative that even if the district judge did apply the correct legal standard, she nevertheless erred in finding that the facts precluded the minor participant reduction. In other words, Dortch contends that as a matter of fact her "culpability ... was relatively minor compared to that of other participant(s)." *Caballero*, 936 F.2d at 1299. We review the district court's factual findings under the clearly erroneous standard and we accord "due deference to the district court's application of the guidelines to the facts." *Kim*, 23 F.3d at 517 (quoting 18 U.S.C. § 3742(e)(4)); *see also Koon v. United States*, — U.S. —, —— ——, 116 S.Ct. 2035, 2046–47, 135 L.Ed.2d 392 (1996); *United States v. Graham*, 83 F.3d 1466, 1481–82 (D.C.Cir. 1996) (applying these standards of review in affirming denial of minor participant reduction).

Dortch claims she was relatively less culpable than Edwards and Henderson because they supplied the drugs while she was only the go-between who arranged the deals. She also claims that she realized a relatively small profit compared to Henderson and Edwards. We disagree with Dortch's assessment of her relative culpability. Dortch played an instrumental role in each of the drug transactions. She did more than simply exchange names and telephone numbers. The record shows that at least once Dortch actually handled the drugs and exchanged them for money. On another occasion Dortch requested payment in drugs for her services in arranging the deal. On the facts of the case, the district court did not err in denying the minor participant reduction.

■■■ Dortch also argues that the district court erred in denying a "diminished capacity" downward departure under section 5K2.13 of the guidelines.[5] The district court interpreted "diminished capacity" under the guidelines to refer to diminished *intellectual* capacity. Dortch Sent. Tr. at 14. Dortch contends that diminished capacity refers not only to intellectual capacity but also encompasses psychological or behavioral disorders. If such a psychological or behavioral disorder serves as the basis for the departure, however, there must be an accompanying inability to reason. *See United States v. Goossens*, 84 F.3d 697, 701 (4th Cir.1996); *United States v. Cantu*, 12 F.3d 1506, 1512–13 (9th Cir.1993). The district judge below simply stated that there could be no reduction absent diminished "intellectual capacity." "Intellectual capacity" means one's ability to reason or make judgments. The district judge's statement, "I don't know why we would suggest that because she may have psychological problems that she has intellectual capacity problems," Dortch Sent. Tr. at 15, is not to the contrary. We take this statement to mean not that psychological or behavioral disorders can never support a diminished capacity reduction but only that Dortch failed to establish that any psychological problems she may have had diminished her ability to reason. The record supports the district court's finding. Dortch produced only a report from a psychologist opining that she suffered from "extreme introversion, ... an inability to interact or connect with people and ... pronounced distrust of others." Dortch App. at 23. These traits do not entitle Dortch to a diminished capacity departure. Moreover, there was nothing in the report to suggest that her personality problems contributed to the crime by diminishing her ability to reason.

**5.** Section 5K2.13 provides:

> If the defendant committed a non-violent offense while suffering from significantly reduced mental capacity not resulting from voluntary use of drugs or other intoxicants, a lower sentence may be warranted to reflect the extent to which reduced mental capacity contributed to the commission of the offense, provided that the defendant's criminal history does not indicate a need for incarceration to protect the public.

For the foregoing reasons, the judgments of the district court are

*Affirmed.*