**UNITED STATES of America,
Appellee,**

v.

**Steven A. GRAHAM, Appellant.**

**No. 00–3121.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Nov. 4, 2002.

Decided Jan. 31, 2003.

A. J. Kramer, Federal Public Defender, argued the cause and filed the briefs for appellant.

Roy W. McLeese III, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were Roscoe C. Howard, Jr., U.S. Attorney, John R. Fisher, and Timothy J. Heaphy, Assistant U.S. Attorneys.

Before: RANDOLPH and ROGERS, Circuit Judges, and WILLIAMS, Senior Circuit Judge.

Opinion for the Court filed by Circuit Judge ROGERS.

ROGERS, Circuit Judge:

Steven Graham appeals his conviction by a jury of conspiracy to distribute heroin or cocaine base, 21 U.S.C. § 846, and posses-sion with intent to distribute heroin, 21 U.S.C. § 841 (a)(1) & (b)(1)(C). Graham contends that: (1) an FBI agent was improperly allowed to offer irrelevant hearsay evidence to Graham's prejudice, (2) the government improperly attempted to impeach his key witness, and (3) the district court essentially directed a verdict for the government with regard to the conspiracy count. We conclude that Graham has failed to show that the hearsay evidence was prejudicial in light of other evidence from conspirators or to show plain error with regard to his two other contentions. Regarding his sentence, Graham contends that the district court erred in: (1) determining the quantity of drugs to be attributed to him, (2) denying a downward adjustment as a minor participant, and (3) imposing supervised release in excess of the amount allowed by statute. Although Graham's first two sentencing challenges are meritless, because the district court improperly sentenced Graham under § 841(b)(1)(A), we remand the case for resentencing under § 841(b)(1)(C). Accordingly, we affirm the judgment of conviction except insofar as we remand the case to the district court to impose a term of supervised release under § 841(b)(1)(C).

## I.

Graham was arrested on May 26, 1999, at the Arthur Capers housing area in Southeast, Washington, D.C., by Metropolitan Police Department officers. The officers' trial testimony revealed that one of them had observed Graham dropping an object resembling small bags of heroin on the ground as the police had approached him. However, Graham was almost immediately released from custody and not re-arrested until June 18, 1999, on a parole violator warrant. The government thereafter indicted Graham for being part of a drug conspiracy led by Kevin Gray; his indictment was severed from that of the

other defendants and Graham went to trial alone.

At trial, the government presented essentially three types of evidence: (1) tape recordings of conversations obtained from wiretaps of Gray's cellular phone; (2) testimony from admitted conspirators Maurice Andrews and Marvin Dixon, who provided explanations for the meaning of the words in the taped telephone conversations and described incidents they had observed or heard about regarding Graham's activities as part of the drug conspiracy; and (3) testimony from the arresting officers. In his defense, Graham showed that he was on supervised release or in prison during the time of the conspiracy except for approximately six weeks, from May 4 to June 18, 1999. Through the testimony of Dale Harris, Graham also disputed an officer's testimony that he dropped the bags later confirmed to contain heroin; Harris testified that she did not see Graham drop anything on the ground when the police approached him on May 26, 1999. The prosecutor attempted to impeach Harris by asking her about a number of prior convictions, which, except for one, she denied. The jury found Graham guilty of conspiracy to distribute heroin or cocaine base, and possession with intent to distribute heroin.

During sentencing, Graham objected to the draft presentence report on the ground that there was insufficient evidence to attribute to him two to four kilograms of cocaine and one to three kilograms of heroin; he also contested factual conclusions in the report that connected Graham to the Gray conspiracy. A revised report reduced the drug quantities attributable to Graham to not more than 150 grams of cocaine base and between one and three kilograms of heroin. The government filed a memorandum in support of the reduced attributions. At the sentencing hearing, Graham reiterated that there was

insufficient and contradictory evidence to attribute the full amount of the reduced quantity of drugs to him, and that the government had failed to establish the scope of the conspiracy Graham had entered. The district court rejected Graham's arguments, adopted the conclusions of the presentence report, and sentenced Graham to the high end of the sentencing range (168–210 months) under the Sentencing Guidelines: two concurrent 210–month sentences of imprisonment, followed by two concurrent sentences of five years and three years of supervised release.

## II.

On appeal, Graham's challenges a series of rulings by the district court at trial and sentencing.

## A.

■ Regarding his trial, Graham first contends that he was prejudiced as a result of the district court's error in allowing FBI Agent Fullmer to testify as to irrelevant and hearsay matters. Our review of the admissibility of hearsay evidence is for abuse of discretion. *United States v. Evans*, 216 F.3d 80, 85 (D.C.Cir.), *cert. denied* 531 U.S. 971, 121 S.Ct. 411, 148 L.Ed.2d 317 (2000).

■ The government's case began with testimony from FBI Agent Fullmer about the wiretaps that had been placed on Kevin Gray's telephone. The prosecutor asked the Agent: "What information specifically led the Safe Streets Task Force to focus on Mr. Gray as the subject of investigation?" Defense counsel objected to the question as calling for hearsay. The district court overruled that objection, and Agent Fullmer testified:

We had received information from numerous sources that Mr. Gray and his organization were involved in trafficking

in large amounts of narcotics, be it cocaine, heroin, marijuana, as well as being responsible for numerous murders in the Washington, D.C. metropolitan area. The prosecutor then elicited from the Agent a detailed explanation of the FBI's investigation of the Gray organization, the legal process by which the FBI obtained a wiretap on Gray's telephone, how it recorded information from that telephone, and the process by which that information was analyzed and stored. This included admission of the application for the wiretap and associated affidavits (some of which defense counsel consented to admission).

■ Graham contends that the admission of the Agent's answer quoted above was error, and that all of the Agent's background testimony concerning the wiretap as well as the affidavits and the application for the wiretap were inadmissible hearsay and prejudicial. Assuming that defense counsel's initial objection to the first question and the Agent's answer sufficed to preserve his objection to any later testimony that might have been hearsay, and that the first question and answer were inadmissible hearsay, see *Evans*, 216 F.3d at 84–89, Graham's claim fails. First, most of the testimony by the Agent was not hearsay, and, contrary to Graham's contentions, was relevant to the reliability of the wiretap evidence. Second, Graham waived any claim as to the admissibility of a number of documents when defense counsel consented to their introduction as evidence. Third, with respect to the limited testimony that is arguably hearsay, Graham fails to show how he was prejudiced. The Agent's "background" testimony about the Gray conspiracy was duplicated by properly admitted evidence from two admitted conspirators, Andrews and Dixon. *United States v. Lampkin*, 159 F.3d 607, 615 (D.C.Cir.1998).

## B.

■ Graham's challenge to the prosecutor's cross-examination of the key defense witness would be more problematic had defense counsel made a contemporaneous objection. However, absent such objection, our review is confined to whether there was plain error, see *United States v. Olano*, 507 U.S. 725, 731–37, 113 S.Ct. 1770, 1776–80, 123 L.Ed.2d 508 (1993), and we find none.

The prosecutor asked Dale Harris about a series of previous convictions: for marijuana possession in Maryland, for escape, for theft, for bail violations, for assault and battery, for possession of a controlled substance with intent to distribute in Maryland, and for possession of cocaine and heroin in D.C. Harris admitted the conviction for marijuana possession, but denied the other convictions, claiming that another person had been using her name and had been arrested and convicted. The prosecutor also asked Harris whether she had been charged but not convicted of possession of heroin; Harris admitted she had. At the close of the evidence, defense counsel requested that the jury be instructed that the government had failed to impeach Harris, except for the conviction she admitted, and also moved for a new trial when the district court declined to give the instruction.

■ Graham contends that the cross-examination of Harris was improper because: (1) evidence of the Maryland conviction was improperly admitted under Fed.R.Evid. 609(a) as the conviction is neither a felony nor a crime of dishonesty or false statement; (2) the prosecutor improperly asked Harris whether she had been charged but not convicted of a crime and asked about other convictions that were not felonies; (3) the prosecutor did not have a good-faith basis for the crossexamination; and (4) the district court never

ruled in advance that the prior-conviction evidence was admissible as more probative than prejudicial under Fed.R.Evid. 403. Assuming the Maryland conviction is not punishable by more than one year's imprisonment, and therefore does not qualify as a felony for purposes of Rule 609(a), as appears to be the case, Md.Code Ann., Art. 27, § 287(e) (2000) (repealed 2002), and assuming further that the prosecutor's questions about whether Harris had ever been charged but not convicted of a drug crime and about whether she had ever been convicted of any crimes in general were improper, as they appear to be, *Jordan v. Medley*, 711 F.2d 211, 218 (D.C.Cir. 1983), Graham fails to show that the alleged error is "clear" or "obvious," and "prejudicial" because it "affected the outcome of the district court proceedings," and that the error "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Olano*, 507 U.S. at 734, 736, 113 S.Ct. at 1778, 1779.

The challenged cross-examination involved Harris, not the defendant, and hence any error is likely to have been less prejudicial. *United States v. Logan*, 998 F.2d 1025, 1032 (D.C.Cir.1993). Further, the prosecutor never directly discussed the convictions in his closing arguments to the jury, referring instead to the question of whether Harris had "any motive to say something that's not true after the police ran up in her apartment several times" in searches of her apartment by the FBI and local police. *See id.* at 1032. Although Harris provided key eyewitness testimony in Graham's defense, and the evidence whether Graham had dropped the drugs at Arthur Capers was hardly overwhelming (as only one of the two police officers at the scene testified that he had seen Graham drop the bags of heroin), more telling is the government's evidence through coconspirator Andrews that Graham himself told Gray that he had left the bags in the area at the time. Overall, then, the circumstances fail to indicate an error sufficiently prejudicial to warrant a new trial; whether Graham dropped the drugs at the site or not was only relevant for one of the two charges, and the error only involved one of the multiple grounds on which the prosecutor sought to impeach the defense witness. Graham's contention that the prosecutor's other questions were improper is without merit because he fails to show that the convictions are not felonies. Moreover, the district court instructed the jury that a lawyer's question is not evidence, and thereby mitigated prejudice that might arise from any juror confusion. *See, e.g., United States v. Clarke*, 24 F.3d 257, 270 (D.C.Cir.1994).

■■■ Graham's other contentions challenging Harris's cross examination also fail. First, Graham fails to show that the prosecutor did not have a good-faith basis for the cross-examination of Harris. The prosecutor stated in advance that the government had a criminal history record for Dale Harris that it intended to rely upon. Even assuming it would be preferable for the prosecutor, prior to cross-examination of a key defense witness, to ascertain that the witness is the person named in the criminal history, Graham does not proffer evidence to suggest that, as a result of the FBI searches, the government should have known that Dale Harris was not the person identified in much of the criminal history. Second, there is no evidence that Graham ever sought a Rule 403 analysis by the district court. Third, although defense counsel requested a special instruction that Harris had not been impeached except as to the conviction she admitted, the requested instruction is different from an instruction advising the jury how it could permissibly use the evidence of Harris' prior conviction; the proposed instruction would not have cured any prejudice that resulted from the government's im-

proper questioning about the prior nonfelony conviction.

## C.

■ Graham's further contends, for the first time on appeal, that the district court erroneously instructed the jury by "essentially directing a verdict for the government by telling the jury that [Graham] was involved in the conspiracy and what his role was." Appellant's Br. 39. The district court instructed the jury that:

> The government has presented evidence that Defendant Graham was involved in the conspiracy for several months in the spring and summer of 1999. The government has also presented evidence that Defendant Graham's role in the conspiracy involved the purchasing of heroin and cocaine from Kevin L. Gray, the alleged leader of the charged conspiracy, and the redistribution of that heroin and cocaine to various purchasers in and around Washington, D.C.

Whatever its defects, the instruction falls short of directing a verdict for the government on an element of the crime. *See United States v. DeFries,* 129 F.3d 1293, 1310–12 (D.C.Cir.1997). The instruction only summarized the type of evidence presented by the government and was not "so restrictive as to remove from the jury any of its factfinding authority." *United States v. Breedlove,* 204 F.3d 267, 271 (D.C.Cir.2000). This point was made clear to the jury by other instructions: one shortly after the instruction quoted above, that the government must "prove each of the following elements [of conspiracy] beyond a reasonable doubt," listing the elements of conspiracy, and one earlier instruction, that the jury should disregard any expression or opinion by the district court regarding the facts. Under the circumstances, inasmuch as defense counsel did not object in the district court, we find no plain error.

## D.

■ Turning to Graham's sentencing challenges, Graham first contends that, in light of the near ten-fold increase in his sentence as a result of the quantity of attributed drugs, the government must prove the facts underlying the attribution by clear and convincing evidence. Because Graham did not object in the district court to the standard of proof for attribution, our review is for plain error, and we find none.

This circuit has never applied the "clear and convincing" standard at sentencing. *United States v. Jackson,* 161 F.3d 24, 26–27 (D.C.Cir.1998); *United States v. Toms,* 136 F.3d 176, 186–87 (D.C.Cir.1998); *United States v. Kwong–Wah,* 966 F.2d 682, 688 (D.C.Cir.1992). Other circuits have rejected a heightened burden of proof. *United States v. Thompson,* 51 F.3d 122, 125 (8th Cir.1995); *United States v. Johnson,* 32 F.3d 265, 268 n. 1 (7th Cir.1994). *But see, e.g., United States v. Jordan,* 256 F.3d 922, 927–29 (9th Cir.2001); *United States v. Hopper,* 177 F.3d 824, 833 (9th Cir.1999). The Third Circuit, which pioneered the heightened standard, *see United States v. Kikumura,* 918 F.2d 1084, 1098–102 (3d Cir.1990), has refused to apply it in cases similar to Graham's case, *see United States v. Paulino,* 996 F.2d 1541, 1545 & n. 4 (3d Cir.1993); *see also United States v. Mack,* 229 F.3d 226, 234 (3d Cir.2000) (listing cases). Indeed, where the increased punishment is based solely on the charged and convicted conduct, such as in drug cases (like the instant case) where drug quantity determines the offense level and therefore the guidelines range, and where no upward departure from the guidelines range is contemplated, courts have been less likely to apply a heightened standard. *See, e.g., Toms,* 136 F.3d at 187; *Kwong–Wah,* 966 F.2d at 688; *see also Jordan,* 256 F.3d at 928; *United*

States v. Behler, 14 F.3d 1264, 1272 (8th Cir.1994); *Paulino,* 996 F.2d at 1545 & n. 4. Given the lack of clarity concerning the standard, even assuming error by the district court in applying the preponderance of evidence standard, any error was neither a "clear" nor "obvious" error.

 Graham further contends that the district court failed to determine the scope of his involvement in the conspiracy. *See United States v. Childress,* 58 F.3d 693, 722 (D.C.Cir.1995). Graham had argued that the evidence showed he was simply a small-time drug dealer who only had a direct relationship with Gray and was not part of the larger conspiracy: "[T]here is no indication that Mr. Graham assisted Mr. Gray in any way other than the distribution of these piddling amount of drugs; that is, the 40 grams or so of heroin." The district court ruled that even accepting Graham's argument that he should only be held responsible for the drugs that he personally distributed, Graham was nonetheless responsible for 62 grams of cocaine base and more than a kilogram of heroin.

 In so ruling, the district court rejected defense counsel's challenge to the factual conclusion in the presentence report regarding the amount of drugs that Graham personally distributed. Moreover, contrary to Graham's position on appeal, the record shows that the district court understood that the attributable drugs had to be reasonably foreseeable to Graham and within the scope of his agreement to join the Gray conspiracy. *Cf. Childress,* 58 F.3d at 723. That the district court's analysis was sparse is not determinative; the district court focused on Graham's arguments contesting factual conclusions and rejected them, and referred to the 62 grams of cocaine base that the evidence indicated was given to Graham. The district court thus made more than a generalized or conclusory finding of Graham's involvement. *United States v. Badru,* 97 F.3d 1471, 1478 (D.C.Cir.1996); *see United States v. Thomas,* 114 F.3d 228, 256–57, 259–61 (D.C.Cir.1997).

Graham's challenge to the sufficiency of the evidence for the drug quantities attributed to him fares no better. The presentence report, in setting the quantity of attributable drugs, relied on: (1) Andrews' testimony that Gray gave Graham thirty-one grams of cocaine base on two occasions; (2) the intercepted telephone conversations between Graham and Gray indicating that "Graham was involved in several transactions of reselling of heroin for Kevin Gray," and that after Graham was initially taken into custody on May 26, he requested help from Gray by telephone; (3) Dixon's testimony that he observed Gray handing to Graham fourteen grams of heroin wrapped in tissue paper, that Graham had given Gray money for the heroin after Gray told Graham that $1,400 was owed, and that Graham regularly called Gray; and (4) Andrews' testimony that Graham regularly asked Gray for heroin and cocaine to sell because Graham needed money, that Gray regularly gave Graham drugs to resell, involving sixty to seventy bags of pre-cut heroin initially, and later uncut heroin, and that Graham sold drugs regularly at Arthur Capers. As noted, the final presentence report concluded that the proper amount of drugs attributable to Graham was one to three kilograms of heroin, and 50 to 150 grams of cocaine base.

Graham challenged whether there were any telephone conversations that supported the report's conclusion that he was involved in reselling heroin on a daily basis, as well as Dixon's testimony regarding the heroin transferred to Graham, noting that Dixon had only testified that he saw Gray hand something wrapped in tissue paper to Graham and that it was unclear from the testimony how many times Gray

gave heroin to Graham. Graham also challenged whether the testimony supported the conclusion that Gray gave Graham thirty-one grams of cocaine base on two occasions; on appeal, Graham points to the contrary trial testimony that there was no cocaine available in the District of Columbia at the relevant time. Finally, Graham questioned how the report had developed its final drug amounts. In response, the government pointed to Andrews' testimony on the amount of cocaine base that Gray had given Graham and testimony from Andrews and Dixon regarding transfers of heroin to Graham. The district court adopted the drug quantity conclusions in the presentence report, specifically referring to sixty-two grams of cocaine base.

■ Federal Rule of Criminal Procedure 32 requires that when a defendant alleges any factual inaccuracy in the presentence report, the district court should either make a finding resolving the controverted matter or determine that it will not consider the controverted matter in sentencing the defendant. *United States v. Graham*, 83 F.3d 1466, 1477 (D.C.Cir. 1996). While the government maintains that Graham waived any claim of error because he never asked the district court to make specific findings, referencing waivers under Fed.R.Crim.P. 12, *see United States v. Caballero*, 936 F.2d 1292, 1296 (D.C.Cir.1991), and under 18 U.S.C. § 3553(c), *see United States v. McCabe*, 270 F.3d 588, 590 (8th Cir.2001), *cert. denied* 535 U.S. 1009, 122 S.Ct. 1588, 152 L.Ed.2d 506 (2002), it is unnecessary to decide whether Graham made sufficient objection to the specificity of the district court's factual findings on the sufficiency and quality of the evidence supporting drug quantity. *Compare United States v. Edmond*, 52 F.3d 1080, 1103–04 (D.C.Cir. 1995) *with United States v. Yeh*, 278 F.3d 9, 14 (D.C.Cir.2002); *In re Sealed Case*, 246 F.3d 696, 702 (D.C.Cir.2001); *United States v. Sobin*, 56 F.3d 1423, 1428 (D.C.Cir.1995). Assuming no waiver, the record shows that the district court sufficiently addressed Graham's challenges to the factual basis for the conclusions in the presentence report. Although the evidence as to the amount of heroin is sparse, Andrews' testimony that Gray gave Graham cocaine base on at least two occasions was specific as to quantity, and that amount, from sixty-two to ninety-three grams, was sufficient to justify the offense level of thirty-two, U.S. Sentencing Guidelines § 2D1.1(c) (1998), at which Graham was sentenced. With respect to the contrary testimony regarding the availability of cocaine base in the District during the summer of 1999, the district court referred Andrews' testimony in making its ruling, implicitly indicating that it was crediting Andrews' testimony. Moreover, the record allowed the district court to resolve any contradiction in a number of alternative ways, by concluding, for example, that the contrary testimony was limited in either geographic or temporal scope. Inasmuch as Graham never objected in the district court on the basis of the contrary trial testimony, the district court's factual findings were sufficient. *Cf. United States v. Pinnick*, 47 F.3d 434, 437–38 (D.C.Cir. 1995).

### E.

Graham also contends that the district court erred by denying his request for a downward adjustment. Section 3B1.2 of the Sentencing Guidelines provides for a two-level adjustment if "the defendant was a minor participant in any criminal activity." The corresponding application note states that this adjustment is appropriate for "any participant who is less culpable than most other participants, but whose role could not be described as minimal." U.S. Sentencing Guidelines Manual § 3B1.2, cmt. 3 (1998).

Our review of the district court's application of the Sentencing Guidelines to the facts of the case is for clear error, *United States v. Washington,* 106 F.3d 983, 1015 (D.C.Cir.1997), according "due deference to the district court's application of the guidelines to the facts," *United States v. Edwards,* 98 F.3d 1364, 1371 (D.C.Cir.1996) (quotation omitted). In applying the minor offender provision of the Guidelines, the court has pointed out that:

> Before it may find that a defendant was a minor participant in the offense, however, the evidence available to the [district] court at sentencing must, at a minimum, show (i) that the "relevant conduct" for which defendant would, within the meaning of section 1B1.3(a)(1), be otherwise accountable involved more than one participant ... and (ii) that the defendant's culpability for such conduct was relatively minor compared to that of the other participant(s).

*Caballero,* 936 F.2d at 1299. The district court may not rely solely on the "status" of a defendant within a criminal organization, such as a courier or a salesman. *Caballero,* 936 F.2d at 1299; *see also Edwards,* 98 F.3d at 1370. It is clear error for a district court not to consider a downward adjustment where the district court has found that the defendant had a lower level of culpability than other participants in the conspiracy. *United States v. Mitchell,* 49 F.3d 769, 784–85 (D.C.Cir.1995). On appeal this court looks at the entire record. *Edwards,* 98 F.3d at 1370–71. In determining whether there is error, the court examines the defendant's culpability relative to others in the context of the relevant conduct that is being considered for sentencing purposes. *United States v. Olibrices,* 979 F.2d 1557, 1560–61 (D.C.Cir. 1992).

The determination of whether a defendant is eligible for a downward adjustment under Section 3B1.2 depends in large part on a determination of the amount of relevant conduct for which the defendant is being held responsible; this relevant conduct is the denominator for purposes of the Section 3B1.2 analysis. To the extent that Graham contends that this denominator should be the totality of the conspiracy and not his particular activity, as is reflected in Graham's position that he was merely a low-level drug dealer and therefore should be eligible for this downward adjustment, he makes a flawed assumption about the proper denominator. As Graham would have it, his culpability for purposes of Section 3B1.2 would not depend on the relevant conduct for which he is being held responsible, but on the unrelated conduct of others in the conspiracy. Graham's interpretation of the appropriate denominator is not reflected in the Sentencing Guidelines or the application notes, and he cites no source of authority to support his interpretation. Thus, while the district court acknowledged that Graham "might have been a lesser participant in the overarching conspiracy," it concluded, with respect to the relevant conduct for which Graham was held responsible, that in view of "the kilo of heroin and the 62 grams of crack, [Graham] didn't have a minor or minimal role."

Graham faces an uphill battle challenging the deference that this court owes to the district court's findings of fact. To the extent that Graham's challenge attacks the district court's conclusion that he was not a minor participant with respect to the relevant conduct for which he was held responsible, contrary to Graham's view, there is evidence that he was an integral part of the Gray drug conspiracy. The wiretaps revealed that he regularly sold drugs for Gray during a six-week period in the summer of 1999. There was evidence that Graham visited locations where Gray

stored drugs, and that Graham asked Gray for protection from another individual who threatened him when they were competing for drug sales. This evidence supports the district court's conclusion that Graham was not less culpable than other individuals who worked as retail drug salesmen for the Gray organization. Contrary to Graham's view, it would not be inconsistent for the district court to view the evidence, as does the government, as showing that Graham is not a minor figure with respect to his relevant conduct in the Gray conspiracy but also showing increased attributed drug quantities with regard to the scope of the conspiracy that Graham entered. The district court could properly conclude from the evidence, summarized above, that Graham was a significant cog in the Gray machine, and not a minor participant, even taking into account the substantial scope of the conspiracy in which he was involved. To the extent that Graham contends that "[t]he problem with the district court's reasoning ... is that [he] was held responsible for far more drugs than the conduct in which he participated," Appellant's Br. at 54, he is again raising an unavailing challenge to the sufficiency of the evidence for drug quantity attribution.

### F.

Finally, Graham contends that the district court improperly sentenced him under § 841(b)(1)(A) contrary to the holding of the Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). Because the presentence report referred to his maximum sentence under § 841(b)(1)(A), and the district court stated that it was adopting the recommendations of the presentence report, Graham maintains that "in sentencing [him] to the top of the [Guideline] range of 168–210 months, the district court may well have been influenced by the wrong belief that [he] faced a life maximum sentence" pur-

suant to § 841(b)(1)(A). Appellant's Br. at 43. Graham further maintains, in light of his sentence to a five-year period of supervised release, that this portion of his sentence was based on the mandatory minimum sentence under § 841(b)(1)(A), and that he could not have been convicted of that offense because the question of drug quantity was never submitted to the jury as required by *Apprendi*. Because Graham's only claims in the district court of sentencing error were a request for a new trial and an objection to the term of imprisonment on the ground that drug quantity had to be submitted to the jury under *Apprendi*, our review of his challenge to the period of supervised release is for plain error. *See United States v. Saro*, 24 F.3d 283, 286–88 (D.C.Cir.1994).

Under § 841(b)(1)(C), a defendant faces a maximum prison sentence of twenty years and a mandatory minimum supervised release sentence of three years. By contrast, § 841(b)(1)(A) sets a maximum term of imprisonment of life and a mandatory minimum term of supervised release of five years. Drug quantity amounts determine which of the two provisions apply. The issue of drug quantity was not submitted to the jury at Graham's trial, despite Graham's arguments that *Apprendi* required it, because the district court agreed with the government that drug quantity under § 841(b) should only be a jury question where the government is seeking a prison sentence of more than twenty years.

With respect to Graham's challenge to his term of imprisonment, the district court sentenced Graham to less than the maximum term of imprisonment allowable under § 841(b)(1)(C). Hence, Graham cannot show *Apprendi* error, for, in this circuit, "where the defendant was charged with and convicted of ... an unspecified § 841(b) offense" without a jury determi-

nation of drug quantity, as occurred in Graham's case, it "seems appropriate" that "because the defendant was sentenced below (C)'s maximum, there was no '*Apprendi* error' at all." *United States v. Webb*, 255 F.3d 890, 898 (D.C.Cir.2001); *see also United States v. Fields*, 251 F.3d 1041, 1043–44 (D.C.Cir.2001); *In re Sealed Case*, 246 F.3d at 698–99. Moreover, assuming *Apprendi* error, the fact that Graham's sentence was less than the twenty years' maximum under § 841(b)(1)(C) eliminates prejudice from the error. *See United States v. Samuel*, 296 F.3d 1169, 1176 (D.C.Cir.2002); *Webb*, 255 F.3d at 898.

 With respect to Graham's supervised release sentence, this circuit, in light of *McMillan v. Pennsylvania*, 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986), has held that *Apprendi* does not apply to mandatory minimum sentencing. *United States v. Agramonte*, 276 F.3d 594, 597–98 (D.C.Cir.2001). Graham has not claimed that there is any inconsistency between the sentencing provisions of § 841(a)(1)(C) and the Sentencing Guidelines § 5D1.2, which, given the classification of the drug offense as a Class C felony, 18 U.S.C. § 3559(a), requires a supervised release sentence between two and three years, 18 U.S.C. § 3559(a). The question, therefore, is whether Graham's supervised release sentence was proper under § 841. However, because neither the government nor the district court was specific about the provision of § 841 under which Graham was convicted, the question becomes whether drug quantity is an element of the offense defined in § 841, such that it must be submitted to the jury to be determined beyond a reasonable doubt, and a defendant must be convicted of violating a particular subparagraph of § 841, as argued by Graham. The alternative position, adopted by the government at sentencing and on appeal, *see* Appellee's Br. at 48–51, is that drug quantity is merely a sentencing factor, to be determined by the district court at sentencing based on a preponderance of the evidence, and that a defendant need only be convicted of distributing some indeterminate amount of drugs under § 841.

Prior to *Apprendi*, the circuit courts, including this circuit, held that the various provisions of § 841(b) established sentencing factors based on drug quantity. *See Kwong-Wah*, 966 F.2d at 685. After *Apprendi*, and after Graham was sentenced, this court interpreted § 841 as a tripartite statute establishing three separate offenses, with different maximum sentences based on drug quantity, and not a unitary statute with drug quantity as a sentencing factor. *Webb*, 255 F.3d at 895–96 (citing *United States v. Fields*, 242 F.3d 393, 396 (D.C.Cir.2001)); *accord In re Sealed Case*, 246 F.3d at 699. The defendant in *Webb*, a career offender whose sentence had been enhanced on recidivism grounds, had challenged his thirty-year sentence under § 841 on the grounds that drug quantity and the question of his prior conviction had not been submitted to the jury. *Webb*, 255 F.3d at 893. In the course of rejecting defendant's *Apprendi* challenge, the court also had to address the role of a Sentencing Guidelines provision whose application depended on whether the defendant had been convicted of § 841(b)(1)(A), (B), or (C). *Id.* at 899. In addressing that question, the court read this circuit's opinion in *Fields* as having implicitly treated § 841 as a tripartite statute in light of the government's concession in *Fields* that the issue of drug quantity had to be submitted to the jury in order to increase the maximum sentence that could be imposed under § 841. *Id.* at 896. The court concluded in *Webb* that the district court erred in ruling that Webb could be guilty of a violation of § 841(b)(1)(A) and (B) when the issue of drug quantity had not been decided by the jury. *Id.* at 900. "[A] conviction for the (A) or (B) offense is not proper unless the relevant drug threshold

has been stated in the indictment, submitted to the jury, and proven beyond a reasonable doubt." *Id.*

Consequently, in light of *Webb,* and perhaps even in light of *Fields,* the district court, in sentencing Graham, could not treat subparagraphs (A) and (C) of § 841 as mere sentencing factors, and to the extent it did it erred. The question remains whether the error was "plain." As noted, prior to *Webb* and *Fields,* "well-established precedent in this circuit held that" § 841 was a unitary statute, *Webb,* 255 F.3d at 894, and therefore the government did not need to prove drug quantity in order to establish a conviction with a maximum prison sentence of life. *See Kwong–Wah,* 966 F.2d at 685. *Apprendi* itself, while decided prior to Graham's trial and prompting Graham to raise objections to the failure to submit drug quantity to the jury, "did not address the interpretation or constitutionality of § 841" nor predetermine whether § 841 was a unitary or tripartite statute. *See Webb,* 255 F.3d at 895–96. "In evaluating whether an error is 'plain,' . . . where the law has changed since the time of trial, 'it is enough that an error be "plain" at the time of appellate consideration.' " *Webb,* 255 F.3d at 897 (quoting *Johnson v. United States,* 520 U.S. 461, 468, 117 S.Ct. 1544, 1549, 137 L.Ed.2d 718 (1997)). Thus, even though *Webb* and *Fields* were decided after Graham's sentencing, the error of law is plain.

Under the circumstances, we conclude that Graham's substantial rights were affected and a remand is required. It is true that even if Graham had been convicted only of violations of § 841(b)(1)(C), the five-year supervised release sentence could have been imposed, because (C) only sets a three-year mandatory minimum requirement for supervised release. However, the presentence report and the district court judgment indicate that Graham was to receive a five-year supervised release sentence under Count 1 of the indictment, under which Graham was to be sentenced pursuant to § 841(b)(1)(A), and a three-year supervised release under Count 14 of the indictment, under which Graham was to be sentenced pursuant to § 841(b)(1)(C). In other words, the district court in sentencing Graham appears to have tracked the mandatory minimum sentencing provisions of § 841, and thus may have applied § 841(b)(1)(A), which increased Graham's supervised release period by two years. In such a situation, "we will not permit our result to be guided by idle speculation as to the sentence that might be imposed by the district court on remand." *Fields,* 251 F.3d at 1046 (quoting *United States v. Jones,* 235 F.3d 1231, 1238 (10th Cir. 2000)). Consequently, a remand is appropriate for resentencing of the term of supervised release under § 841(b)(1)(C). *See Saro,* 24 F.3d at 288, 291–92.

Accordingly, we affirm the judgment of conviction except we remand the case for resentencing under § 841(b)(1)(C) with respect to the term of Graham's supervised release.