Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued March 13, 2003         Decided May 16, 2003

No. 02-3003

UNITED STATES OF AMERICA,
APPELLEE

v.

KENNETH KEITH LONG,
APPELLANT

———

Appeal from the United States District Court
for the District of Columbia
(No. 99cr00182–01)

———

*Neil H. Jaffee*, Assistant Federal Public Defender, argued the cause for appellant. With him on the briefs was *A. J. Kramer*, Federal Public Defender.

*Mary B. McCord*, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were *Roscoe C. Howard, Jr.*, U.S. Attorney, *John R. Fisher*, *Roy W. McLeese*

———

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

*III*, *Gregg A. Maisel* and *Sherri L. Berthrong*, Assistant U.S. Attorneys.

Before: RANDOLPH and ROGERS, *Circuit Judges,* and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*: Two main issues predominate in this appeal of a criminal conviction for interstate transportation of a minor with intent to engage in criminal sexual activity and possession of photographs of minors engaged in sexually explicit conduct. The first issue is whether the district court abused its discretion in admitting other-acts evidence and expert testimony; the second involves the standard of proof to be applied at sentencing. Kenneth Keith Long appeals his conviction on the ground that the district court admitted extrinsic evidence of Long's sexual activity with young adults and of his possession of photographs depicting unidentified individuals for no proper reason under Federal Rule of Evidence 404(b), thereby creating a prejudicial risk of misuse of the evidence to show propensity under Federal Rule of Evidence 403. Long also contends that the district court erred by permitting the government to introduce expert testimony profiling "preferential sex offenders" in violation of Federal Rules of Evidence 404(a) and 403. Long's challenge to his sentence arises because the district court's application of the cross references in §§ 2G1.1(c)(1) and 2G2.4(c)(1) of the Sentencing Guidelines resulted in an eight-level increase in his offense level. He contends that this increase required clear and convincing proof (of which, he claims, there is none) to show that his offenses included conduct that had as its purpose the production of sexually explicit depictions of the minors, as required by the cross references.

Under Rules 401, 403, and 404, a defendant is entitled to the considered judgment of the district court before evidence of uncharged conduct is admitted. In the main, these are rules of admission, subject to limited exceptions to be applied in the exercise of the district court's discretion. The record makes clear that Long received his due. The district court's examination of the government's proffered evidence was sen-

sitive to the prejudicial effect of which Long complains on appeal, while remaining responsive to the government's need to rebut Long's defense and present its case, *see Old Chief v. United States*, 519 U.S. 172, 182–83, 187–88 (1997), and we find no abuse of discretion by the district court in the application of Rules 401, 403, and 404. We further find no error by the district court in applying a preponderance of the evidence standard at sentencing, and that Long's evidentiary challenges to his sentence fail. Accordingly, because Long's challenges to the sufficiency of the evidence under counts four and seven are without merit, we affirm.

## I.

The evidence at trial revealed that Long, a Baptist minister and substitute teacher, became acquainted through those positions with a number of minor boys between thirteen and sixteen years of age. Six of the boys were the victims underlying the charges in the indictment. According to the six boys' trial testimony, Long engaged in a pattern of conduct that resulted in sexual contact with them, often taking sexually explicit photographs. In addition to the six boys, the government called two non-minor males, "FM" and "AG," ages sixteen and nineteen at the time of their interaction with Long, who testified that Long had engaged in similar patterns of conduct resulting in sexual activity with them and had taken sexually explicit photographs. The government also introduced a large number of photographs—over 250—found in Long's apartment, showing the minor victims and other young males in sexually explicit poses. Finally, the government presented Federal Bureau of Investigation Agent Kenneth Lanning, who testified as an expert "in the field of sexual exploitation of children," including "the typology, identification, characteristics, and strategies of sexual offenders, in particular preferential sexual offenders," as well as "the characteristics and behavior of child victims of sexual abuse."

Long was tried on a seven-count indictment charging four counts of interstate transportation of a minor with the intent

to engage in criminal sexual activity, 18 U.S.C. § 2423(a) (2000), and two counts of possession of visual depictions of minors engaged in sexually explicit conduct, 18 U.S.C. § 2252(a)(4)(B) (2000). The government dismissed a seventh count, for sexual exploitation of a child, during trial. The jury returned a split verdict: it found Long guilty of two counts of interstate transportation and two counts of possession of child pornography but not guilty of one count of interstate transportation (of "JLG"); it deadlocked on another count of interstate transportation (of "EB"), which the government later dismissed. After denying Long's motion for a new trial, the district court sentenced Long to 360 months imprisonment followed by three years supervised release, imposed a fine and assessment, and recommended mental health counseling under the Bureau of Prisons' sex offender treatment program.

## II.

On appeal, Long contends that the district court abused its discretion in admitting two types of evidence. First, Long contends that the district court erred in admitting the testimony of FM and AG, who were not minors under the applicable statute at the time of their acquaintances with Long. Acknowledging that FM's testimony was "prejudicial," the district court ruled the testimony was admissible to show intent, modus operandi, and absence of mistake or accident. Similarly, the court ruled that AG's testimony was admissible and instructed the jury that it could consider AG's testimony only to determine whether Long acted with a criminal intent with respect to the charges in the indictment, engaged in a scheme or plan, used a similar modus operandi, had a motive to commit the charged crimes, or acted knowingly. The court cautioned that the jury could not consider either man's testimony to find that Long had a bad character or criminal propensity. Long contends that testimony about his lawful acts was not relevant under Federal Rule of Evidence 401 to establishing criminal intent, modus operandi, or a common plan or scheme. He further contends that the testimony was inadmissible character evidence under Rule 404(b) and should

have been excluded under Rule 403 because its unfair prejudicial effect substantially outweighed its probative value.

Our review of the district court's Rule 404(b) rulings is for abuse of discretion, *United States v. Bowie*, 232 F.3d 923, 926–27 (D.C. Cir. 2000) (citations omitted), and necessarily affords the district court "much deference," *United States v. Cassell*, 292 F.3d 788, 792 (D.C. Cir. 2002) (quotation and citation omitted). A district court's ruling on a Rule 404(b) objection will be sustained so long as the evidence is relevant under Rule 401 and is offered as proof of a matter other than the defendant's character or propensity to commit a crime. *Bowie*, 232 F.3d at 930. Evidence of similar acts must also be sufficient to support a jury finding that the defendant committed the other crime or act. *Huddleston v. United States*, 485 U.S. 681, 689 (1988).

Under Rule 401, evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Not all relevant evidence, however, is admissible. Rule 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Fed. R. Evid. 404(b). But the rule stipulates that such evidence "may . . . be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . . ." *Id.* Under the law of this circuit, "Rule 404(b) is a rule of inclusion rather than exclusion," *Bowie*, 232 F.3d at 929, and it is "quite permissive," excluding evidence only if it is offered for the sole purpose of proving that a person's actions conformed to his or her character. *Id.* at 929–30 (quotation and citations omitted).

Among the several grounds for admitting the testimony of FM and AG, the district court found that it was probative of Long's intent to engage in criminal sexual conduct with the six minor victims. Long contends that this was not a proper ground for admission because there is an incongruence be-

tween Long's intent to engage in lawful sexual conduct with males over the age of sixteen and his alleged intent to engage in unlawful sexual conduct with minor boys. Extrinsic act evidence is admissible under the intent theory, he maintains, only if the intent underlying the extrinsic act is the same illegal intent required for the charged act.

Evidence of a similar act must meet a threshold level of similarity in order to be admissible to prove intent, *see Jankins v. TDC Mgmt. Corp.*, 21 F.3d 436, 441 (D.C. Cir. 1994)*; United States v. Foskey*, 636 F.2d 517, 524 (D.C. Cir. 1980), but the court has not required the sort of exact congruence that Long suggests. On the contrary, "Rule 404(b)'s terminology 'other crimes, wrongs, or acts' includes conduct that is neither criminal nor unlawful if it is relevant to a consequential fact." 2 Weinstein's Federal Evidence § 404.20[2][a] (2d ed. 2003) (footnote omitted). The other activity need not have resulted in a charge or conviction; indeed, the defendant may even have been acquitted of the conduct, or the conduct may have been entirely lawful. *Id.* § 404.21[2][b]; *e.g., United States v. Cavin,* 39 F.3d 1299, 1311 (5th Cir. 1994); *United States v. Ashman,* 979 F.2d 469, 492 (7th Cir. 1992); *United States v. Brown,* 961 F.2d 1039, 1042 (2d Cir. 1992); *United States v. Atwell*, 766 F.2d 416, 421–22 (10th Cir. 1985) (per curiam). What matters is that the evidence be relevant "to show a pattern of operation that would suggest intent" and that tends to undermine the defendant's innocent explanation. 2 Weinstein's Federal Evidence § 404.22[1][a]. Thus, this court has opined, "the admissible bad acts evidence need not show incidents identical to the events charged, so long as they are closely related to the offense," *United States v. DeLoach*, 654 F.2d 763, 769 (D.C. Cir. 1980), and are probative of intent rather than mere propensity.

The chief theory of Long's defense was that the six alleged minor victims had fabricated their tale of sexual abuse. Long thus denied not that he had a close relationship with the boys, but rather that he had ever engaged in sexual activity with them. The testimony of FM and AG was relevant to show Long engaged in a "pattern of operation," 2 Weinstein's

Federal Evidence § 404.22[1][a], that lends credence to the minors' assertions that in their cases as well the seemingly innocent behavior culminated in sexual contact. The manner in which Long developed a relationship with the minor boys was strikingly similar to the way in which he ingratiated himself to FM and AG. Like the minor victims, FM was a special education student, and Long asked FM to give Long "candy" whenever Long wanted oral sex, in exchange for which Long promised to buy FM sneakers and other gifts. Long also sought to videotape and take photographs of FM masturbating. AG, too, was a special education student for whom Long was a substitute teacher, and AG, too, received offers of gifts from Long in addition to overt sexual advances. As he had done with the six minors, Long recruited FM and AG to join the Alpha Phi Gents fraternity, which both witnesses understood would (and, in FM's case, did) involve sexual acts. In a similar context, the Seventh Circuit held that "classic modus operandi evidence used to respond to the defense argument that [the defendant] had only innocent intentions" with respect to the young male victim was "highly probative of intent." *United States v. Romero*, 189 F.3d 576, 588 (7th Cir. 1999). So, too, the testimony of FM and AG met the threshold level of similarity to the charged events and tended to establish that Long's pattern of ingratiation was animated by an intent to engage in sexual contact. As such, the testimony of FM and AG was admissible for a proper purpose under Rule 404(b). *See United States v. Crowder*, 141 F.3d 1202, 1209 (D.C. Cir. 1998) (*Crowder II*).

Long contends, however, that even if the testimony of FM and AG was relevant for a purpose unrelated to criminal propensity, its "slight probative value was substantially outweighed by the unfair risk that the jury would infer that Long had a propensity to engage in sexual activities with teenagers—be they minors or young adults." Appellant's Br. at 20. Under Rule 403, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by . . . needless presentation of cumulative evidence." Fed. R. Evid. 403. This court has observed that "Rule 403

contemplates the thoughtful consideration of the trial court and leaves the admission of evidence to the sound discretion of the trial judge." *United States v. Boney*, 977 F.2d 624, 631 (D.C. Cir. 1992). Because "[t]he trial court is in the best position to perform" the "subjective balancing" that Rule 403 requires, its decision is reviewed only for " 'grave abuse.' " *United States v. Washington*, 969 F.2d 1073, 1081 (D.C. Cir. 1992) (citations omitted).

The district court concluded that the significant probative value of FM's and AG's testimony was "not substantially outweighed by the danger of unfair prejudice or confusion of the issues or misleading the jury" in light of instructions that the court would give to the jury. *See Crowder II*, 141 F.3d at 1210 (citing Fed. R. Evid. 403, advisory committee notes); *see also United States v. Hersh*, 297 F.3d 1233, 1254 n.31 (11th Cir.), *cert. denied*, 123 S. Ct. 1319 (2002). Its probative force arose because the men, at or above the age of consent, were still teenagers, and Long did not claim they lied about his sexual contact with them. Limiting instructions may sometimes demand of jurors "a mental gymnastic which is beyond, not only their powers, but anybody's else," *Nash v. United States*, 54 F.2d 1006, 1007 (2d Cir. 1932) (L. Hand, J.), and the nature of the pattern evidence here might suggest that instructions would have marginal effect, *see United States v. Brown*, 490 F.2d 758, 765–66 & nn.20–21, 777–78 (D.C. Cir. 1973); *cf. Carter v. District of Columbia*, 795 F.2d 116, 126–27 (D.C. Cir. 1986). But limiting instructions ordinarily suffice to protect the defendant's interests. *Spencer v. Texas*, 385 U.S. 554, 561 (1967). Even though admission for a proper purpose under Rule 404(b) does not the end the inquiry, because Rule 403 has an independent role to play, Rule 403 "focuses on the 'danger of *unfair* prejudice' and affords the court discretion to exclude evidence only if that danger '*substantially* outweigh[s]' the evidence's probative value." *United States v. Gartmon*, 146 F.3d 1015, 1021 (D.C. Cir. 1998) (citing Fed. R. Evid. 403). Given the probative strength of the witnesses' testimony regarding strikingly similar conduct and the government's need to respond to Long's defense, Long fails to show that the district court

gravely abused its discretion in admitting the testimony of FM and AG.

Similar concerns underlie Long's second evidentiary objection to the admission of "voluminous" photographic evidence. Long challenges the admission of photographs and negatives that were not part of the child pornography charges in counts six and seven but instead were seized from Long's home after his arrest. He contends that evidence of his possession of these uncharged photographs was irrelevant because the photographs were not proven to be depictions of minors, and his possession was therefore lawful. Hence, he maintains, the substantial number of uncharged, sexually explicit and suggestive photographs only provided bad character evidence and served no proper purpose under Rule 404(b) inasmuch as "evidence of lawful possession of certain items is not admissible under Rule 404(b) to prove unlawful possession of similar items." Appellant's Br. at 25.

The district court did not allow the government to offer into evidence all 301 of its proffered photographs and negatives. Rather, over the course of three days, the court examined each piece of evidence and spent hours with counsel in chambers reviewing the photographs in addition to hearing arguments in court regarding their admissibility. The district court then limited the government to introducing photographs that: (1) corroborate the government witnesses' testimony of certain events and activity; (2) demonstrate the minor boys' relationship with Long; (3) rebut Long's defense that the minor victims had fabricated the allegations of sexual abuse and that he did not possess the charged photographs; or (4) show modus operandi. The court also instructed the jury that it could not consider the photographic evidence to conclude that Long had a "bad character." With these limitations, the district court concluded that admission of uncharged photographs in Long's possession would not show mere propensity to collect child pornography but were admissible for legitimate Rule 404(b) purposes. The uncharged photographic evidence was relevant in light of Long's denial of the possession of the child pornography charged in counts six and seven of the indictment: many of the charged photo-

graphs and negatives were found in packets and envelopes with the uncharged photographs that the court allowed the government to introduce into evidence, and Long's fingerprints also were found on some of the uncharged photographs.

It hardly can be denied that "in cases where a defendant is charged with unlawful possession of something, evidence that he possessed the same or similar things at other times is often quite relevant to his knowledge and intent with regard to the crime charged." *United States v. King*, 254 F.3d 1098, 1100 (D.C. Cir. 2001) (citing *Huddleston*, 485 U.S. at 689). Hence, "it [is] within the discretion of the district court to admit evidence regarding similar acts of possession that suggest 'repetitive involvement in the same kind of criminal activity' even if they do not involve the same objects." *Id.* at 1100–01 (quoting *United States v. Lego*, 855 F.2d 542, 546 (8th Cir. 1988)). Because the evidence of Long's possession of the uncharged photographic evidence was probative of disputed elements—possession and intent—of the charged offenses, the district court did not abuse its discretion in allowing admission of certain of the non-charged photographs in Long's home. *See United States v. Garot*, 801 F.2d 1241, 1247 (10th Cir. 1986).

Long's reliance on *Guam v. Shymanovitz*, 157 F.3d 1154 (9th Cir. 1998), is misplaced. In *Shymanovitz*, the defendant was charged with unlawful sexual activity involving minors, and the district court admitted, as relevant to intent, police testimony regarding the contents of sexually explicit magazines found in the defendant's house, as well as two sexually explicit articles from the magazines. 157 F.3d at 1155. The Ninth Circuit held that "mere possession of reading material that describes a particular type of activity makes it neither more nor less likely that a defendant would intentionally engage in the conduct described . . . ." *Id.* at 1158. "At the very most," the court stated, the magazines tended to show that the defendant "had an interest in looking at gay male pornography, reading gay male erotica, or perhaps even, reading erotic stories about men engaging in sex with underage boys, and *not* that he actually engaged in, or even had a

propensity to engage in, any sexual *conduct* of any kind." *Id.* at 1158–59. *Shymanovitz* is distinguishable. The Ninth Circuit stated that lawful possession of gay erotica was not probative of the defendant's intent to engage in the charged conduct of sexual abuse. *Shymanovitz*, 157 F.3d at 1158–59. Even if this is correct, and we express no view on the subject, the court did not suggest that possession of pornography would be inadmissible for other, permissible purposes. Here, as explained, the district court admitted the uncharged photographic evidence for purposes that were both specific and unrelated to propensity. Hence, Long fails to show an abuse of discretion under Rule 404(b).

Of course, evidence that is admissible under Rule 404(b) may still be excluded under Rule 403 "if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." Fed. R. Evid. 403. Long contends that "[t]he sheer volume of the extrinsic photographic evidence contributed to its prejudicial impact" and that "the devastating effect of the hundreds of photos of mostly unidentified young males substantially outweighed their marginal probative value under Rule 403." Appellant's Br. at 28. In Long's view, the district court "should have severely restricted the number of photographs of young males viewed by the jury and excluded virtually all of the uncharged sexually explicit or suggestive ones." Appellant's Br. at 29. At oral argument in this court, the government acknowledged that "a lot" of photographs were introduced into evidence but contended that the evidence was necessary to rebut Long's defense of lack of possession of the charged items.

Under Rule 403, the district court has discretion to exclude evidence that is unfairly prejudicial where its effect is merely cumulative. Fed. R. Evid. 403; *see, e.g.*, *United States v. Rose*, 104 F.3d 1408, 1414 (1st Cir. 1997); *United States v. Hays*, 872 F.2d 582, 588 (5th Cir. 1989); *Levin v. United States*, 338 F.2d 265, 273 (D.C. Cir. 1964). There may well be a point at which the admission of a multitude of photographs depicting uncharged conduct would tilt so far as to unfairly prejudice a defendant's right to a fair trial. But it is difficult, if not impossible, to draw a line at which such evidence, by

virtue of its sheer volume, necessarily becomes unfairly preju-
dicial. As this court has observed, "the Rule 403 inquiry in
each case involving Rule 404(b) evidence will be case-specific.
There can be no 'mechanical solution,' no *per se* rule. . . ."
*Crowder II*, 141 F.3d at 1210. Rather than drawing a bright
line, appellate courts have instead enforced the gatekeeping
role of the district court in admitting relevant evidence and
reviewed its decision for abuse of discretion. *See United
States v. Manner*, 887 F.2d 317, 322–23 (D.C. Cir. 1989).
That is, "Rule 403 contemplates the thoughtful consideration
of the trial court and leaves the admission of evidence to the
sound discretion of the trial judge." *Boney*, 977 F.2d at 631.
In Long's case, the record confirms that the district court
commendably fulfilled its proper role.

The district court reviewed *in camera* every photograph
that the government sought to introduce into evidence and
heard argument on the admissibility of each. Outside the
presence of the jury, the court identified virtually every
photograph and explained its reasons for admitting or exclud-
ing the evidence. For instance, the court described a number
of photographs that featured nude or partially nude males of
unidentified ages, often sexually aroused or masturbating.
The court ruled that the government would not be allowed to
introduce these photographs into evidence if they contained
no other relevant information that connected Long to the
charged offenses. While undertaking this examination, the
court was mindful of the possibility that the large number of
photographs, taken together, might have an unfair prejudicial
effect. It explained that "there is a continuum of explicit-
ness," and that, "to the extent that the quantity of pictures
. . . may together create . . . unfair prejudice," the court was
inclined to exclude the most explicit and least probative
photographs. This is the type of "thoughtful consideration,"
*Boney*, 977 F.2d at 631, that Rule 403 requires. The district
court confined the admission of the uncharged photographs
under Rule 404(b) to four relevant purposes, imposed further
constraints on the photographs' admission under Rule 403,
and gave limiting instructions to the jury. The court demon-
strated an awareness of the need to exclude photographs at

either extreme, either because they were too explicit or barely probative. Long has offered no reason why admission of any particular photograph was an abuse of discretion, or why the total number created unfair prejudice that "substantially outweighed" the probative purposes found by the district court. Consequently, this court cannot conclude that admission was a "grave abuse" of discretion. *Washington*, 969 F.2d at 1081.

## III.

Long also contends that the district court erred in admitting the expert testimony of FBI Agent Kenneth Lanning. The district court allowed Lanning to testify "as an expert concerning sexual exploitation of children, including the typology, identification, characteristics and strategies of a sexual offender, particularly preferential sex offenders, and the characteristics and behavior of child victims of sexual abuse." Long does not challenge Lanning's testimony as improper under the Rules of Evidence that generally govern expert testimony, Fed. R. Evid. 702–05, or the Supreme Court's decisions in *Daubert v. Merrell Dow Pharmaceuticals,* 509 U.S. 579 (1993), and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999). Instead, Long maintains that Lanning's testimony amounted to improper character evidence under Rule 404(a)(1) and was unfairly prejudicial under Rule 403. Fed. R. Evid. 403, 404(a)(1).

Lanning's testimony focused on the behavior of a class of criminals he termed "preferential sex offenders," whose sex offenses are characterized by "paraphilia," or "an attraction to or intense fantasies . . . involving certain elements." He opined that "very often part of their preference is the age and gender of their victim," and that "their primary motivation is, in fact, sexual gratification." Lanning identified three patterns of behavior within the general class of preferential sex offenders. Among these patterns of behavior is the "seduction process," through which the sex offender uses attention, kindness, gifts, and money to lower his or her victims' inhibitions. During this process, the sex offender often will use

alcohol, drugs, and pornography to arouse the victims and to lower further their inhibitions. Lanning also opined that these offenders often have strong interpersonal skills and occupy positions of authority, such as a school teacher or minister, and also are often adept at identifying victims who are weak and vulnerable, such as children whose family life is dysfunctional. Lanning added that sex offenders often photograph their victims, and he also offered insight into the reasons why children who are victimized by a sex offender may remain in the offender's presence.

Rule 404(a) provides that "[e]vidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion," except in specified circumstances. Fed. R. Evid. 404(a). According to Long, Lanning's testimony contravened this rule because it tended to show that Long acted in conformity with the characteristics of a preferential sex offender in committing the charged offenses. Although Long acknowledges that Lanning did not explicitly testify that Long exhibited the characteristics of a preferential sex offender, he contends that, to the extent the expert testimony mirrored the government's case against him, it was analogous to the improper use of a criminal profile as substantive evidence.

"Courts have condemned the use of profiles as substantive evidence of guilt," *United States v. McDonald*, 933 F.2d 1519, 1521 (10th Cir. 1991), while acknowledging that there is a "fine line between potentially improper profile evidence and acceptable specialized testimony," *United States v. Becker*, 230 F.3d 1224, 1231 (10th Cir. 2000), *cert. denied*, 532 U.S. 1000 (2001). In general, the "profile" label is not helpful in distinguishing admissible from inadmissible expert testimony. Instead, courts focus on the Federal Rules of Evidence and the purpose for which the evidence is offered: whether it is designed improperly to illuminate the defendant's character or propensity to engage in criminal activity, or whether instead it seeks to aid the jury in understanding a pattern of behavior beyond its ken. *Becker*, 230 F.3d at 1231; *McDonald*, 933 F.2d at 1522; *see also Boney*, 977 F.2d at 628–

31. Thus, experts may testify regarding the modus operandi of a certain category of criminals where those criminals' behavior is not ordinarily familiar to the average layperson, as in the case of the modus operandi of persons involved in illegal drug trafficking or prostitution. *See, e.g., United States v. Watson*, 171 F.3d 695, 703 (D.C. Cir. 1999); *United States v. White*, 116 F.3d 903, 921–22 (D.C. Cir. 1997) (per curiam); *United States v. Chin*, 981 F.2d 1275, 1279 (D.C. Cir. 1992); *Boney*, 977 F.2d at 627–29 (D.C. Cir. 1992); *United States v. Anderson*, 851 F.2d 384, 392–94 (D.C. Cir. 1988). Still, there is " 'a line that expert witnesses may not cross.' " *United States v. Boyd*, 55 F.3d 667, 671 (D.C. Cir. 1995) (citations omitted). "[W]hat is proscribed is questioning that produces responses suggesting some special knowledge of the defendant's mental processes." *Watson*, 171 F.3d at 703 (citation omitted); *accord Boyd*, 55 F.3d at 672. This line relates to the limits of Rule 704(b) on opinion evidence regarding the ultimate issue, not to Rule 404(a)'s constraints on character evidence.

The admission of Lanning's testimony has been approved by the two circuits to have considered it. In *United States v. Romero*, 189 F.3d 576 (7th Cir. 1999), the Seventh Circuit upheld the admission of testimony by Lanning that was similar to the testimony he offered in Long's case. As he did here, Lanning testified in *Romero* regarding the characteristic patterns of "preferential sex offenders," but he also responded to hypothetical questions from the prosecution that mirrored the defendant's conduct. *Id.* at 582–84. The Seventh Circuit noted "the value of expert testimony in explaining a complicated criminal methodology that may look innocent on the surface but is not as innocent as it appears." *Id.* at 584 (citations omitted). The court observed that it was precisely this value that made Lanning's testimony helpful to the jury, because it "described the modus operandi of modern child molesters," with which the average juror is unfamiliar. *Id.* at 585. Rejecting the contention that Lanning's testimony constituted improper character evidence under Rule 404(a), the court explained that "[p]resenting character evidence is an attempt to use a person's personality or psychological

propensity to prove what the person did." *Id.* at 587. "Lanning's testimony," however, "did exactly the opposite. It was an attempt to use [the defendant's] actions to prove his psychological propensities . . . . As such, it was not really character evidence at all." *Id.* The court concluded that, "[t]o the extent that Agent Lanning discussed the preferences and psychological proclivities of sex offenders, he did so only to elaborate on his behavior-driven analysis of their modus operandi." *Id.* Also, in *United States v. Cross*, 928 F.2d 1030, 1034 (11th Cir. 1991), Lanning testified in a prosecution for mail fraud, mailing obscene material, and conspiracy to persuade a minor to engage in sexually explicit conduct for the purpose of producing visual or print media. The Eleventh Circuit held that Lanning's testimony regarding the "characteristic behaviors of pedophiles" was admissible to show whether the defendant had the intent to use the photographs to produce and distribute child pornography, to explain his modus operandi, and to establish that the pornographic photographs at issue—seemingly innocent "nude studies" of children rather than more graphic child pornography—appealed to the prurient interest. *Id.* at 1049–51.

As noted, this court has generally permitted expert testimony regarding the modus operandi of a certain type of criminal offender. *See, e.g., Watson*, 171 F.3d at 703. For example, in *United States v. Anderson*, 851 F.2d 384, 392 (D.C. Cir. 1988), the government's expert witness testified regarding pimping patterns and the pimp-prostitute relationship. As jurors cannot be presumed to have knowledge of these matters, the court focused on the fact that the expert's testimony "might have shed light on critical issues in the case" and "helped the jury to determine the credibility of" the prosecution's other witnesses. *Id.* at 393. Thus, because the "testimony had a significant bearing on facts 'that could be determinative of [the defendant's] guilt or innocence,'" and in light of the trial court's wide discretion, the court held the testimony to be admissible. *Id.* (citation omitted). By the same token, Lanning's testimony was designed to aid the jury in understanding the modus operandi of preferential sex offenders. The Seventh Circuit held in *Romero* that Lan-

ning's testimony "was critical in dispelling from the jurors' minds the widely held stereotype of a child molester as 'a dirty old man in a wrinkled raincoat' who snatches children off the street as they wait for the school bus." *Romero*, 189 F.3d at 584. Similarly, the district court here determined that the average layperson lacks knowledge regarding the manner in which preferential sex offenders operate. Long was a minister of the church and a substitute teacher, positions a juror would ordinarily view as held by law-abiding citizens of high moral character. A juror would also be familiar with the well-known fact that young children are impressionable and do not always tell the truth, whether because of exposure to an ambiguous and unfamiliar act, probing questions about matters relating to sex, or a desire to please the inquisitor. *See generally Maryland v. Craig*, 497 U.S. 836 (1990). As the government also notes, Lanning's testimony helped to rebut Long's defenses of innocent intent and fabrication. Under the circumstances, the district court did not abuse its discretion in concluding that Lanning's expert testimony was admissible under Rule 404(a).

Again, Long contends that even if the expert testimony was relevant and admissible under Rule 404(a), it was so inherently prejudicial that the district court should have excluded it under Rule 403. The Eleventh Circuit rejected this objection to Lanning's testimony in *Cross*, observing that the testimony's "considerable probative value" was not outweighed by any possible prejudicial effect. *Cross*, 928 F.2d at 1051. The court also noted that "because there was extensive, particularized evidence of Cross's sexual attitudes toward children offered at trial by the government and, indeed, by Cross himself, it is doubtful that Lanning's more generalized testimony about the nature of pedophilia could have independently affected the jury's verdict." *Id.* (citing *Anderson*, 851 F.2d at 394 (D.C. Cir. 1988)). Moreover, in *Anderson*, 851 F.2d at 393–94, this court held that the expert testimony regarding pimps' modus operandi was not barred by Rule 403, even though "the risk of unfair prejudice was heightened by the sordid and disturbing nature of [the] subject matter," *id.* at 393; "[g]iven th[e] large quantity of uncontested, particular-

ized evidence against Anderson in the record," the court found it "almost inconceivable that [the expert's] general, more attenuated, testimony about the prostitution underworld could have independently affected the jury's verdict," *id.* at 394, and its admission "was, at worst, harmless error," *id.*

For much the same reasons as in *Cross* and *Anderson*, Long's Rule 403 objection fails: Lanning's testimony was offered for a permissible purpose, namely to identify the behavior and actions of child molesters and explain their modus operandi, the prosecution adduced considerable other evidence of Long's pedophilia, and the jury was instructed that the weight to be given to Lanning's testimony was for the jurors to determine. *See Cross*, 928 F.2d at 1051; *Anderson*, 851 F.2d at 393–94. Long suggests the Rule 403 balance tilts in his favor because the probative value of the expert testimony was undermined by Lanning's failure to include any statistical analysis from his case studies to indicate the prevalence of the various behavioral patterns and characteristics among preferential sex offenders. While this suggestion appears more to be an objection to the expert's qualifications on *Daubert* grounds, an objection that Long has not made on appeal, it falls short when viewed as a Rule 403 contention, because expert testimony need not be based on statistical analysis in order to be probative. *Cf. Kumho Tire*, 526 U.S. at 150. Rather, because "[t]his testimony illuminated how seemingly innocent conduct . . . could be part of a seduction technique," it "shed light on a critical issue in the case," *Romero*, 189 F.3d at 585, and hence, the district court did not abuse its discretion in concluding that its probative value was not "substantially outweighed" by its unfair prejudicial effect, Fed. R. Evid. 403.

## IV.

Long's challenges to the sufficiency of the evidence of the interstate transportation of one of the minor boys ("JS") and the possession of photographic negatives require only brief response.

Viewing the evidence, as we must, in the light most favorable to the government, *United States v. Morris*, 977 F.2d 617, 619 (D.C. Cir. 1992), we hold that there was sufficient evidence from which a reasonable juror could find that, at the time Long transported one of the victims, JS, from Puerto Rico to the District of Columbia, JS was a minor. Although JS testified that he was sixteen years old when he traveled to the District of Columbia, the government offered evidence that JS was born on June 22, 1982; that he twice came to visit Long in the District of Columbia; and that JS's first visit was, as he testified, on an American Airlines flight with a connection in Miami. An American Airlines employee testified that Long purchased a ticket in JS's name for an American Airlines flight from San Juan, Puerto Rico, to Washington, D.C., that departed San Juan and connected in Miami on May 28, 1998, a month before JS turned sixteen; airline records indicated that someone used this ticket after presenting identification in JS's name. A juror reasonably could have found that JS incorrectly recalled his age and that the American Airlines records (which are kept in a highly secure location in Tulsa, Oklahoma) are a more reliable source than the young witness's memory.

We also hold that there was sufficient evidence to sustain Long's conviction on count seven for possession of photographic negatives of child pornography. *See Morris*, 977 F.2d at 619. Long contends that the prosecution failed to establish that he constructively possessed the photographic negatives because law enforcement officers found the negatives during a search of his home three weeks after their initial search, and in a location (a trunk on the porch off the master bedroom) that they had previously searched. Long had not been in his home since the original search, and another man, Andre Lazenby, had been residing there in Long's absence. According to the government's evidence: (1) it was undisputed that Long owned the house and resided there; (2) Lazenby denied knowledge of the photographic negatives; (3) the six victims identified photographs developed from the negatives as photos of them that Long had taken; (4) the negatives were linked to photographs contain-

ing Long's fingerprints; (5) the negatives included depictions of Long's possessions; and (6) photographs from other exhibits that the police found during the initial search were developed from the negatives. Based on this evidence, a reasonable juror could infer that Long exercised constructive possession over the items found in his home. *See Morris*, 977 F.2d at 620 (D.C. Cir. 1992) (citing *United States v. Jenkins*, 928 F.2d 1175, 1179 (D.C. Cir. 1991)).

## V.

Long's challenge to his sentence focuses on the standard of proof. He contends that the district court erred in enhancing Long's base offense level by eight levels on the basis of acquitted conduct without finding by clear and convincing evidence that Long engaged in the relevant conduct. This court reviews a sentencing court's factual determinations for clear error, *United States v. Jackson*, 161 F.3d 24, 28 (D.C. Cir. 1998), and affords "due deference" to the district court's application of the Sentencing Guidelines to the facts, 18 U.S.C. § 3742(e) (2000); *Jackson*, 161 F.3d at 28. This court reviews legal questions *de novo*, such as the standard of proof that applies to sentence enhancements under the Sentencing Guidelines. *United States v. Montague*, 40 F.3d 1251, 1252–53 (D.C. Cir. 1994).

Section 2G1.1 of the Sentencing Guidelines applies to convictions for interstate transportation of minors with the intent to engage in criminal sexual activity. United States Sentencing Commission Guidelines Manual ("U.S.S.G.") § 2G1.1 (2000). A cross reference provides, however, that "[i]f the offense involved causing, transporting, permitting, or offering . . . a person less than 18 years of age to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct," the sentencing court is to apply Guideline § 2G2.1. U.S.S.G. § 2G1.1(c)(1). The district court found that the cross reference applied and treated § 2G2.1 as the controlling Guideline provision. *United States v. Long*, 185 F. Supp. 2d 30, 35 (D.D.C. 2001). Similarly, although § 2G2.4 applies to convictions for possession of

visual depictions of minors engaged in sexually explicit conduct, a virtually identical cross reference directs the district court to apply § 2G2.1 if the offense involved causing or transporting "a minor . . . for the purpose of producing a visual depiction" of sexually explicit conduct. U.S.S.G. § 2G2.4(c)(1). Again, the district court found that the cross section applied and treated § 2G2.1 as controlling. *Long*, 185 F. Supp. 2d at 35. The application of the cross references resulted in an eight-level increase in Long's base offense level. *Compare* U.S.S.G. § 2G1.1(a)(1) (specifying base offense level of nineteen), *with* U.S.S.G. § 2G2.1(a) (setting base offense level of twenty-seven); *see also Long*, 185 F. Supp. 2d at 35.

Long acknowledges that the preponderance of the evidence standard ordinarily applies to sentencing determinations. *McMillan v. Pennsylvania*, 477 U.S. 79, 91–92 (1986). In fact, the Sentencing Commission has suggested "that use of a preponderance of the evidence standard is appropriate to meet due process requirements and policy concerns in resolving disputes regarding application of the guidelines to the facts of a case." U.S.S.G. § 6A1.3 (Policy Statement) commentary (2000). And the Supreme Court has held that a sentencing court may take acquitted conduct into account in setting the appropriate sentence. *United States v. Watts*, 519 U.S. 148, 152–53 (1997) (per curiam). But Long contends that in extraordinary circumstances, such as the eight-level increase in his sentence, where the disputed sentencing factors become "a tail which wags the dog of the substantive offense," *McMillan*, 477 U.S. at 88, due process requires proof by clear and convincing evidence.

The Supreme Court has noted "a divergence of opinion among the Circuits as to whether, in extreme circumstances, relevant conduct that would dramatically increase the sentence must be based on clear and convincing evidence." *Watts*, 519 U.S. at 156 (footnote omitted). Two circuits have required clear and convincing evidence for extreme sentencing enhancements. *See United States v. Jordan*, 256 F.3d 922, 927–29 (9th Cir. 2001); *United States v. Paster*, 173 F.3d 206, 219–21 (3d Cir. 1999); *United States v. Kikumura*, 918

F.2d 1084, 1097–1102 (3d Cir. 1990). At least two circuits, however, have rejected a heightened standard of proof at sentencing, *see, e.g., United States v. (Randy) Graham*, 275 F.3d 490, 517 n.19 (6th Cir. 2001), *cert. denied*, 535 U.S. 1026 (2002); *United States v. Washington*, 11 F.3d 1510, 1516 (10th Cir. 1993), while others have found that the case before them did not merit a higher standard, *see, e.g., United States v. Montgomery*, 262 F.3d 233, 249–50 (4th Cir.), *cert. denied*, 534 U.S. 1034 (2001)*; United States v. Cordoba–Murgas*, 233 F.3d 704, 709 (2d Cir. 2000); *United States v. Lewis*, 115 F.3d 1531, 1536–37 (11th Cir. 1997); *United States v. Miner*, 127 F.3d 610, 613–14 (7th Cir. 1997); *United States v. Lombard*, 102 F.3d 1, 5 (1st Cir. 1996); *United States v. Thompson*, 51 F.3d 122, 125 (8th Cir. 1995); *United States v. Vital*, 68 F.3d 114, 121 (5th Cir. 1995). This court, for its part, has noted the split among the circuits on this issue but has declined to require more than the preponderance standard at sentencing. *See United States v. (Steven A.) Graham*, 317 F.3d 262, 269–70 (D.C. Cir. 2003); *United States v. Jackson*, 161 F.3d 24, 26–27 (D.C. Cir. 1998); *United States v. Toms*, 136 F.3d 176, 186–87 (D.C. Cir. 1998); *United States v. Lam Kwong–Wah*, 966 F.2d 682, 687–88 (D.C. Cir. 1992), *overruled on other grounds, United States v. Fields*, 242 F.3d 393, 396 (D.C. Cir. 2001).

The Supreme Court has "held that application of the preponderance standard at sentencing generally satisfies due process." *Watts*, 519 U.S. at 156 (citing *McMillan v. Pennsylvania*, 477 U.S. 79, 91–92 (1986)). As the Court has explained, "[s]entencing courts have traditionally heard evidence and found facts without any prescribed burden of proof at all." *McMillan*, 477 U.S. at 91 (citing *Williams v. New York*, 337 U.S. 241 (1949)). In *McMillan*, the Court stated that "embracing [the] suggestion that we apply the clear-and-convincing standard . . . would significantly alter criminal sentencing. . . ." *Id.* at 92 n.8. And the Court has made clear that *McMillan*'s reasoning remains undisturbed in the wake of *Apprendi v. New Jersey*, 530 U.S. 466 (2000). *Harris v. United States*, 122 S. Ct. 2406, 2419–20 (2002). To date, then, the Supreme Court has held that a preponderance

standard provides sufficient safeguards to satisfy the requirements of due process at sentencing. *Watts*, 519 U.S. at 157.

Lower courts, however, have recognized that "legal rules—even rules that function perfectly well in familiar contexts when stated in categorical terms—cannot always be applied in extreme situations." *Kikumura*, 918 F.2d at 1100 (3d Cir. 1990). The Third Circuit in *Kikumura* limited its holding to the "extreme context" in which the district court's findings regarding uncharged conduct increased the defendant's sentence "from about 30 months to 30 *years*—the equivalent of a 22–level increase in his offense level." *Id.* at 1100–01. The court distinguished this "most dramatic example" from other, smaller increases in the base offense level under the Sentencing Guidelines, suggesting that the preponderance standard provides sufficient due process protections for "probably even a ten-level increase . . . ." *Id.* at 1100. Here, the district court's application of the Guideline's cross references resulted in an eight-level increase in Long's base offense level—an increase that the *Kikumura* court speculated would not merit a heightened burden of proof. *Id.* Although the Third Circuit has subsequently held that the clear and convincing standard was required for a nine-level upward departure for extreme conduct, *United States v. Paster*, 173 F.3d 206, 219–20 (3d Cir. 1999), in that case the departure would have negated the effect of the defendant's guilty plea and undermined principles of proportionality, *id.* at 220–21. Long's sentence, by contrast, does not present such an extreme case. The cross references at issue operate to increase Long's base offense level on the basis of conduct closely related to the charged crimes, *see Lam*, 966 F.2d at 688; *see also United States v. Pugh*, 25 F.3d 669, 676 (8th Cir. 1994), and therefore the sentencing enhancement was not the tail that wagged the dog of the substantive offense, *McMillan*, 477 U.S. at 88; *Kikumura*, 918 F.2d at 1100–01. We accordingly hold that the district court did not err by failing to treat Long's case as presenting "extraordinary circumstances," *Lam*, 966 F.2d at 688; *accord Jackson*, 161 F.3d at 26–27, that require a heightened standard of proof.

Because the district court applied the correct standard of proof at sentencing, there is no merit to Long's challenge to the findings that Long's "purpose" in transporting the minors more likely than not was to create child pornography, thereby justifying application of the § 2G1.1(c)(1) cross reference. There was ample evidence that Long had taken sexually explicit photographs of each of the six minor victims, and the testimony of the victims, and Lanning, supports the finding that Long's transportation of the minors was motivated at least in part by a desire to create these visual depictions. *Long*, 185 F. Supp. 2d at 38–43. For example, crediting the testimony of "JEG" regarding the numerous occasions over the two years that Long had transported the minor to the District of Columbia and the jury's conclusion that Long had intended to engage in sexual conduct, the district court determined that it was "implausible" that Long had not also intended on some of those occasions to induce the sexual conduct in order to photograph it. *Id.* at 38.

Accordingly, we hold that: there was no abuse of discretion in the district court's evidentiary rulings under Rules 401, 403, and 404(a) and (b); there was sufficient evidence for conviction of the charges in counts six and seven; and there was no error at sentencing, and we affirm the judgment of conviction.