# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued October 19, 2023          Decided December 22, 2023

No. 22-3072

UNITED STATES OF AMERICA,
APPELLEE

v.

KHAN MOHAMMED,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:06-cr-00357-1)

*Reedy C. Swanson* argued the cause for appellant. With him on the briefs were *Nathaniel H. Nesbitt* and *Peter S. Spivack*.

*J. Benton Hurst*, Trial Attorney, U.S. Department of Justice, argued the cause for appellee. With him on the brief was *Kaitlin J. Sahni*, Trial Attorney. *Sonja M. Ralston*, Attorney, entered an appearance.

Before: SRINIVASAN, *Chief Judge*, HENDERSON, *Circuit Judge*, and ROGERS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: In 2008, Khan Mohammed was extradited from Afghanistan to the United States, convicted of international drug trafficking and narcoterrorism and sentenced to two concurrent life sentences. He has appealed to this Court twice before: the first panel affirmed his conviction and sentence but remanded for an evidentiary hearing on his claim of ineffective assistance of counsel and the second panel found his trial counsel was constitutionally deficient and remanded to the district court to assess prejudice regarding the narcoterrorism charge. After further proceedings, the district court vacated the narcoterrorism charge and the government declined to re-prosecute. At resentencing for the drug trafficking charge, the district court applied Section 3A1.4 of the Sentencing Guidelines, known as the terrorism enhancement, and imposed a life sentence.

Mohammed appeals his new sentence, arguing that the district court committed legal and factual errors in applying the terrorism enhancement and found facts under the wrong burden of proof. As detailed *infra*, we affirm Mohammed's sentence.

## I.   BACKGROUND

We have described the full history of Mohammed's prosecution in his previous appeals and assume familiarity with our earlier decisions. *See United States v. Mohammed*, 693 F.3d 192 (D.C. Cir. 2012) (*Mohammed I*); *United States v. Mohammed*, 863 F.3d 885 (D.C. Cir. 2017) (*Mohammed II*). We discuss here only the facts relevant to this appeal.

A jury convicted Mohammed of (1) distributing heroin intending or knowing that it would be unlawfully imported into the United States in violation of 21 U.S.C. § 959(a)(1)-(2)

(2006)[1] (the drug trafficking charge); and (2) distributing opium and heroin knowing or intending to provide something of pecuniary value to a terrorist in violation of 21 U.S.C. § 960a (the narcoterrorism charge). *Mohammed I*, 693 F.3d at 197. At sentencing, the district court applied Section 3A1.4(a) of the U.S. Sentencing Guidelines (Guidelines), which increases a defendant's sentence by 12 levels if the offense is "a felony that involved, or was intended to promote, a federal crime of terrorism," U.S.S.G. § 3A1.4(a). *Mohammed I*, 693 F.3d at 197. The court sentenced Mohammed to two concurrent life sentences. *Id.*

Mohammed appealed and raised an ineffective assistance of counsel claim for failure to investigate possible bias of the government's chief witness, Jaweed. *Id.* After a remand, a second appeal and an evidentiary hearing, the district court found that Mohammed had been prejudiced by his trial counsel's constitutionally deficient performance as to the narcoterrorism charge and vacated that conviction. *United States v. Mohammed*, 2021 WL 5865455, at *12 (D.D.C. Dec. 9, 2021). The government declined to re-prosecute that charge.

The district court resentenced Mohammed on the drug trafficking charge. The court again applied Section 3A1.4(a), finding by a preponderance of the evidence that Mohammed intended to promote federal crimes of terrorism by "using drug commissions to buy a car to transport missiles to attack the Jalalabad airport, where U.S. soldiers and others were stationed" or, alternatively, by intending to provide something of value to a terrorist in violation of the narcoterrorism statute. *United States v. Mohammed*, 2022 WL 2802353, at *5-7, *10 (D.D.C. July 18, 2022). The court relied on Mohammed's

---

[1] The statute has since been amended. We cite here to the version in force at the time of Mohammed's offense.

recorded statements, bolstered by testimony from Jaweed, whom the court found to be credible. *Id.* at \*10; *see id.* at \*6-8. The district court sentenced Mohammed to a term of life on the drug trafficking count.

## II. ANALYSIS

For a properly preserved appeal of a sentencing decision, "[p]urely legal questions are reviewed *de novo*; factual findings are to be affirmed unless clearly erroneous; and we are to give due deference to the district court's application of the [sentencing] guidelines to facts." *United States v. Bikundi*, 926 F.3d 761, 796-97 (D.C. Cir. 2019) (per curiam) (alteration in original) (quoting *United States v. Vega*, 826 F.3d 514, 538 (D.C. Cir. 2016) (per curiam)).

If an argument was not raised "with sufficient precision to indicate distinctly [Mohammed's] thesis" in district court, we have discretion to notice and correct "plain error." *Al Bahlul v. United States*, 767 F.3d 1, 9 (D.C. Cir. 2014) (en banc) (quoting *Miller v. Avirom*, 384 F.2d 319, 322 (D.C. Cir. 1967)). Plain error review is "highly circumscribed" and requires (1) error (2) that is plain, (3) that affects substantial rights and (4) that "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 9-10 (first quoting *United States v. Brinson–Scott*, 714 F.3d 616, 625 (D.C. Cir. 2013); then quoting *Johnson v. United States*, 520 U.S. 461, 467 (1997)).

## A.

Mohammed argues that the district court erred by relying on the "intent to promote" prong of Section 3A1.4 because the language has been abrogated by statute: the terrorism enhancement, Mohammed contends, applies only to convictions of federal crimes of terrorism. His argument turns

on the history of the guideline. The Congress directed the U.S. Sentencing Commission (Commission) to adopt the enhancement in 1994:

> The United States Sentencing Commission is directed to amend its sentencing guidelines to provide an appropriate enhancement for any felony, whether committed within or outside the United States, that involves or is intended to promote international terrorism, unless such involvement or intent is itself an element of the crime.

Violent Crime Control & Law Enforcement Act of 1994, Pub. L. No. 103-322, § 120004, 108 Stat. 1796, 2022 (1994). The Commission adopted its first version of the terrorism enhancement in 1995:

> If the offense is a felony that involved, or was intended to promote, international terrorism, increase by 12 levels . . . .

U.S.S.G. § 3A1.4(a) (1995). "International terrorism" as used in the Guidelines referred to "terrorist acts occurring 'primarily outside the territorial jurisdiction of the United States' or transcending 'national boundaries.'" *United States v. Haipe*, 769 F.3d 1189, 1192 (D.C. Cir. 2014) (quoting 18 U.S.C. § 2331(1)(C)).

The Congress issued a new directive in 1996 instructing the Commission to amend the terrorism enhancement:

> The United States Sentencing Commission shall forthwith, in accordance with the procedures set forth in section 21(a) of the Sentencing Act of 1987, as though the authority under that section

> had not expired, amend the sentencing guidelines so that the chapter 3 adjustment relating to international terrorism only applies to Federal crimes of terrorism, as defined in section 2332b(g) of title 18, United States Code.

Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, § 730, 110 Stat. 1214, 1303 (1996). The Commission responded by replacing the phrase "international terrorism" with "federal crime of terrorism":

> If the offense is a felony that involved, or was intended to promote, a federal crime of terrorism, increase by 12 levels . . . .

U.S.S.G. § 3A1.4(a) (1996). "Federal crime of terrorism" is defined in the Guidelines commentary by reference to 18 U.S.C. § 2332b(g)(5), which "lists acts that combine intimidation of government with violation of various criminal provisions, many of which apply inside as well as outside the United States." *Haipe*, 769 F.3d at 1192. The 1996 text remains in force today.

Mohammed argues that the Congress' use of the word "only" in its 1996 directive indicates that the scope of Section 3A1.4 should have been amended to narrow its applicability in some respect and therefore the Commission erred when it substituted "federal crime of terrorism" for "international terrorism" because the amended guideline broadened the enhancement's coverage to apply to both domestic and international crimes of terrorism. *See United States v. Garey*, 546 F.3d 1359, 1362 n.3 (11th Cir. 2008) (Section 3A1.4 applies "more broadly" after 1996 amendment); U.S.S.G. App. C, amends. 539, 565 (Nov. 1, 1997) (same). He maintains that in order to comply with the statute and give effect to the word "only," the enhancement should have been amended to omit

the "intended to promote" prong, with the result that the enhancement would apply only to convictions of federal crimes of terrorism.

Because Mohammed did not raise this argument in district court, we review for plain error only. *See Al Bahlul*, 767 F.3d at 9; *United States v. Breedlove*, 204 F.3d 267, 270 (D.C. Cir. 2000). Mohammed contests forfeiture and points us to his sentencing memorandum but that memorandum referred only to unsettled authority as to when Section 3A1.4 can be applied in the absence of a conviction of a federal crime of terrorism. Because he challenged the application rather than the validity of Section 3A1.4, he failed to put the district court on notice of the argument he now raises before us.

We find no plain error in the district court's application of Section 3A1.4 because there was no plain error in the Commission's 1996 amendment. The Commission must "bow to the specific directives of Congress" but has "'significant discretion in formulating guidelines.'" *United States v. LaBonte*, 520 U.S. 751, 757 (1997) (quoting *Mistretta v. United States*, 488 U.S. 361, 377 (1989)).

The 1996 statutory directive is admittedly ambiguous, as the Fourth Circuit recognized in considering a similar argument. *United States v. Hasson*, 26 F.4th 610, 623 (4th Cir. 2022), *cert. denied*, 143 S. Ct. 310 (2022). But the Commission could reasonably understand the directive to operate as a charter to shift Section 3A1.4's field of operation to federal crimes of terrorism from international terrorism. *Accord Hasson*, 26 F.4th at 623 (1996 directive "is reasonably read as instructing the Commission to edit the type of terrorism to which the adjustment applies by replacing 'international terrorism' with 'federal crimes of terrorism,' which the Commission did"). Under this reading, the word "only" in the

congressional directive is not surplusage because it instructed the Commission to apply the guideline to one definition of terrorism rather than both "international terrorism" *and* "federal crimes of terrorism." The use of "only" in the directive cannot sustain the weight Mohammed places upon it as it does not unambiguously direct that Section 3A1.4's application requires conviction of a federal crime of terrorism.

The plain text of the statute does not give us cause to set aside Section 3A1.4. And Mohammed's preferred interpretation is not embraced by other courts, as no circuit has accepted it, the Fourth Circuit recently rejected it and the Sixth and Seventh Circuits have rejected it implicitly. *See Hasson*, 26 F.4th at 623-24; *United States v. Graham*, 275 F.3d 490, 513-19 (6th Cir. 2001) (affirming application of Section 3A1.4 over dissenting opinion arguing that enhancement is contrary to statute); *United States v. Arnaout*, 431 F.3d 994, 1001-02 (7th Cir. 2005) (reversing district court for "ignoring the plain, unambiguous text of the Guidelines" when it declined to apply terrorism enhancement on ground Congress intended enhancement to apply only to federal crimes of terrorism). Accordingly, the district court did not plainly err by applying Section 3A1.4 to Mohammed's sentence.[2]

**B.**

The district court applied the terrorism enhancement after finding facts under a preponderance-of-the-evidence standard. Mohammed argues that this was legal error because the court applied the preponderance standard as an inflexible rule rather than acknowledging that a higher burden of proof may be appropriate where there are "extraordinary circumstances."

---

[2] Whether Mohammed's argument would survive *de novo* review is not before us.

*See, e.g.*, *United States v. Long*, 328 F.3d 655, 671 (D.C. Cir. 2003) (affirming district court's application of preponderance standard at sentencing because defendant's case was not extraordinary). He contends that his case presents extraordinary circumstances because (1) the terrorism enhancement had a dramatic effect on his sentencing range, increasing the Guidelines range from 97-121 months to 360 months to life and (2) the district court applied the enhancement based on conduct that was the subject of the vacated narcoterrorism conviction, meaning the record was skewed by his constitutionally deficient counsel.

Assuming without deciding that Mohammed's case is extraordinary, the district court did not err by relying on vacated conduct proven by a preponderance of the evidence. The Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), and our post-*Booker* precedent compel this conclusion.

Before the *Booker* Court rendered the Sentencing Guidelines advisory, 543 U.S. at 244-45, we endorsed a preponderance standard at sentencing but sometimes noted in dicta that extreme cases might warrant a more exacting standard than preponderance-of-the-evidence. *See Long*, 328 F.3d at 671; *United States v. Lam Kwong-Wah*, 966 F.2d 682, 688 (D.C. Cir. 1992). Other circuits explicitly held that a higher standard of proof was warranted in extreme cases. *See, e.g.*, *United States v. Kikumura*, 918 F.2d 1084, 1100-02 (3d Cir. 1990). But after *Booker*, "there is no need for courts of appeals to add epicycles to an already complex set of (merely) advisory guidelines by multiplying standards of proof." *United States v. Reuter*, 463 F.3d 792, 793 (7th Cir. 2006). As other circuits have recognized (with the exception of the Ninth Circuit), due process concerns about the burden of proof in extraordinary cases "were put to rest when *Booker* rendered the

Guidelines advisory," as the reasoning underlying earlier case law is no longer applicable. *United States v. Fisher*, 502 F.3d 293, 305 (3d Cir. 2007); *see also, e.g.*, *United States v. Grubbs*, 585 F.3d 793, 801 (4th Cir. 2009); *United States v. Vaughn*, 430 F.3d 518, 525 (2d Cir. 2005). *But see United States v. Staten*, 466 F.3d 708, 717 (9th Cir. 2006) (reaffirming higher standard of proof for extraordinary circumstances).

Our post-*Booker* precedent confirms that the district court did not err by applying a preponderance standard to conduct that was the subject of Mohammed's vacated conviction. In *United States v. Dorcely*, 454 F.3d 366 (D.C. Cir. 2006), we upheld the district court's reliance on acquitted conduct at sentencing after finding facts under a preponderance standard, concluding that the sentence did not pose Fifth or Sixth Amendment concerns. *Id.* at 372-73. And in *United States v. Bras*, 483 F.3d 103 (D.C. Cir. 2007), we affirmed a sentencing court's reliance on untried conduct found by a preponderance of the evidence. *Id.* at 108. If a court may use the preponderance standard to find and rely on acquitted and untried conduct at sentencing, it follows that the same standard applies for conduct that was the subject of a vacated conviction.

We therefore reject Mohammed's argument that the district court erred by finding facts under a preponderance standard, even if his case involved extraordinary circumstances.

## C.

Finally, Mohammed argues that the district court's factual findings do not support application of the terrorism

enhancement.[3] The district court's application of the terrorism enhancement rested on two alternative theories: Mohammed (1) intended to promote the federal crime of terrorism by purchasing a car with drug-trafficking proceeds to transport missiles to fire at the Jalalabad airport and (2) intended to commit the crime of providing something of value to a terrorist—himself—by trafficking the drugs. Mohammed contends that there is no record support for the first theory and that the district court failed to make findings necessary to support applying the enhancement based on the second. Because Mohammed challenges the district court's factual findings, we review for clear error.[4]

Turning to the district court's first theory, Mohammed argues that the record evidence shows that the car he intended to purchase with the drug proceeds was not the same vehicle

---

[3] In his opening brief, Mohammed additionally argued that we should hold this case in abeyance pending the Commission's resolution of a proposed amendment regarding the use of acquitted conduct at sentencing. However, after his opening brief was filed, the Commission deferred any decision on the amendment to 2024. In light of the deferral, Mohammed abandoned his argument on reply. We need not address it here.

[4] The government claims in a footnote that it is "doubtful that Mohammed preserved" his argument contesting the car theory but goes on to assume *arguendo* that there was no forfeiture. Mohammed correctly responds that the government has forfeited any forfeiture argument. *Fox v. District of Columbia*, 83 F.3d 1491, 1496 (D.C. Cir. 1996); *see also Abdelfattah v. U.S. Dep't of Homeland Sec.*, 787 F.3d 524, 532 (D.C. Cir. 2015) ("cursory arguments made only in footnotes" are "deem[ed] forfeited" (cleaned up)). We therefore proceed to the merits of Mohammed's argument.

that would allegedly be used to transport missiles for the attack, undermining the court's factual findings.

The court's earlier findings, incorporated by reference in the July sentencing order, were based on two lines of the recorded conversations between Mohammed and Jaweed. *Mohammed*, 2022 WL 2802353, at *5. On August 30, 2006, Mohammed stated that he and Jaweed would "tightly and firmly load it in our car and bring it." Trial Ex. 2C. The district court interpreted "it" to mean missiles for the planned attack. *United States v. Mohammed*, No. 06-cr-00357, ECF No. 224-11, at 15. On September 10, Mohammed stated: "[I]f we get some money we will buy a car [unintelligible] for business. Once we have money, then the money would keep coming." Trial Ex. 2E. The district court considered these statements in reverse order, concluding that the car to be purchased would be used to transport missiles and carry out an attack. *Mohammed*, No. 06-cr-00357, ECF No. 224-11, at 15. Mohammed contends that the record shows that the vehicle meant to be loaded with missiles was already owned or accessible but the one to be purchased with drug-trafficking money was not yet owned and, when owned, was to be used for more drug activity, not terrorist activity.

Mohammed made a similar argument in *Mohammed I*. Addressing the same recorded statements, he argued that they "cannot be read to support the conclusion of the district court that he was referring to the same car that he said earlier would carry the missiles." *Mohammed I*, 693 F.3d at 201. The *Mohammed I* court rejected his argument, finding that, although the record could support multiple interpretations, Mohammed's reading "is far from proof that the district court's reading of these conversations is clearly erroneous." *Id.* The court concluded that the district court "drew plausible

inferences" based on "specific statements in the record." *Id.* at 202.

We decline to disturb the district court's factual findings, which have already been upheld on appeal. Under the law-of-the-case doctrine, "decisions rendered on the first appeal should not be revisited on later trips to the appellate court" "in the absence of extraordinary circumstances." *LaShawn A. v. Barry*, 87 F.3d 1389, 1393 (D.C. Cir. 1996) (en banc). The doctrine is appropriately applied here, as the *Mohammed I* court addressed the same core factual question now before us and upheld the findings on clear error review. Mohammed identifies no cause to set aside law-of-the-case: he urges an alternative reading of the record but fails to identify any evidence directly contradicting the district court's interpretation.

Because the district court's first theory suffices to uphold the application of Section 3A1.4, we need not reach Mohammed's arguments regarding the second.

\* \* \*

For the foregoing reasons, we affirm Mohammed's life sentence.

*So ordered.*